1    Michael Risher (CA SBN 191627)
     mrisher@aclunc.org
2    Linda Lye (CA SBN 215584)
     llye@aclunc.org
3    AMERICAN CIVIL LIBERTIES UNION
4    FOUNDATION OF NORTHERN CALIFORNIA, INC.
     39 Drumm Street
5    San Francisco, CA 94111
     Tel: (415) 621-2493
6    Fax: (415) 255-8437
7
     Attorneys for Plaintiffs

8

9

10                    UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                       SAN FRANCISCO DIVISION

12

13   AMERICAN CIVIL LIBERTIES UNION OF    ) Case No. CV 12 3728
14   NORTHERN CALIFORNIA;                 )
     *SAN FRANCISCO BAY GUARDIAN*,        )                                   DMR
15                                        ) COMPLAINT FOR DECLARATORY AND
                               Plaintiffs, ) INJUNCTIVE RELIEF
16                                        )
          v.                              )
17                                        )
     FEDERAL BUREAU OF INVESTIGATION,     )
18                              Defendant. )

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, to enforce the public's right to information about federal government surveillance of the political movement that has come to be known as "Occupy Wall Street" or simply "Occupy." The Occupy movement's activism around urgent political and economic issues of the day has garnered extensive and widespread attention from the public and media, as well as law enforcement.  The role of the federal government, in particular, the Federal Bureau of Investigation ("FBI") in investigating and surveilling Occupy movements goes to the heart of pressing and, unfortunately, constantly recurring questions of public interest, such as the federal government's role in monitoring or chilling protected political activism.  It is imperative that the public gain a full and complete understanding of the scope of FBI surveillance of Occupy movements in Northern California – where some of the country's most brutal police crackdowns have occurred – and whether FBI activities in connection with Occupy comport with legal and ethical guidelines.

2.     Over four months ago, on March 8, 2012, Plaintiffs American Civil Liberties Union of Northern California, a non-profit civil rights organization, and *San Francisco Bay Guardian,* an independent newspaper, submitted a FOIA request seeking information about FBI surveillance of the Occupy movement.  Plaintiffs also requested expedited processing, pursuant to 5 U.S.C. §522(a)(6)(E), on the grounds that there is an "urgency to inform the public about actual or alleged federal government activity" and also that this is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  28 C.F.R. §16.5(d)(1)(ii) & (iv).  Acknowledging the import and urgency of this request, the FBI granted Plaintiffs' request for expedited processing on March 26, 2012.  Since that time, however, the FBI has provided Plaintiffs with *no* records or any information regarding the status of its search.

3.     Plaintiffs now bring this action to obtain the information and the expedited processing to which are statutorily entitled.

1      4.    Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") is

2  an affiliate of the American Civil Liberties Union, a national, non-profit, non-partisan

3  organization with the mission of protecting civil liberties from government incursions,

4  safeguarding basic constitutional rights, and advocating for open government.  The ACLU-NC

5  is established under the laws of the state of California and is headquartered in San Francisco,

6  California.  The ACLU-NC has approximately 50,000 members.  In support of its mission, the

7  ACLU-NC uses its communications department to disseminate to the public information

8  relating to its mission, through its website, newsletters, and other publications.

9      5.    Plaintiff *San Francisco Bay Guardian* ("*The Bay Guardian*") is a corporation

10  organized in the state of California and headquartered in San Francisco, California.  It is a

11  newspaper of general circulation and has the largest circulation of a newsweekly in Northern

12  California, with an audited weekly distribution of 65,000.  *The Bay Guardian* has been

13  published continuously since 1966, and its primary activity is publishing or otherwise

14  disseminating information to the public.  *The Bay Guardian* has published extensively on the

15  Occupy movement and FBI surveillance of political and religious activity.  In 2011, *The Bay*

16  *Guardian* received the California Newspaper Publishers Association's General Excellence

17  award for a weekly newspaper.  In 2012, Tim Redmond, the executive editor of *The Bay*

18  *Guardian*, received the Professional Journalist award from the Society of Professional

19  Journalists, Northern California chapter.

20      6.    Defendant Federal Bureau of Investigation is a component of the United States

21  Department of Justice.  The FBI is an agency within the meaning of 5 U.S.C. § 552(f).  The FBI

22  has its headquarters in Washington, D.C., and field offices all over the country, including San

23  Francisco, California.

## JURISDICTION

25      7.    This Court has subject matter jurisdiction and personal jurisdiction over the

26  parties pursuant to 5 U.S.C. §§552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has subject

27  matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1346.

**VENUE AND INTRADISTRICT ASSIGNMENT**

8.      Venue is proper in this district pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §§1391(e) and §1402.  The plaintiffs have their principle places of business in this district.

9.      Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco division is proper because a substantial portion of the events giving rise to this action occurred in this district and division and because both Plaintiffs are headquartered in San Francisco.

**FACTUAL ALLEGATIONS**
**The FBI's Surveillance of the Occupy Movement is**
**A Matter of Significant Public Interest**

10.      The Occupy protests and ensuing law enforcement handling of these protests has featured prominently in the headlines, especially here in Northern California where police crackdowns on peaceful protesters has generated intense public outrage and scrutiny.  FBI surveillance of political activists, on which the instant FOIA request is intended to shed greater light, has long been an issue of widespread media interest and intense public concern.  The public has an urgent need to understand the scope of federal government surveillance of political protest, as such activity implicates core values in a democratic society.  The public therefore has a particularly heightened interest in, and there has already been extensive media coverage, about the federal government's role in monitoring the Occupy movement.

11.      The FBI has a long history of, and the media has extensively covered its, surveillance of First Amendment protected activity, especially of political activists.  *See, e.g.,* Associated Press, "Fusion Center in Tennessee draws trends on crimes," *Elizabethon Star*, February 27, 2012; Eric Lichtblau, "FBI Watched Activist Group, New Files Show," *New York Times,* December 20, 2005; James Ridgeway, "Green is the New Red: The Crackdown on Environmental Activists," *Mother Jones,* May 11, 2011; Colin Moynihan and Scott Shane, "For Anarchist, Details of Life as FBI Target," *New York Times,* May 28, 2011; Charlie Savage, "FBI Casts Wide Net Under Relaxed Rules for Terror Inquiries, Data Show," *New York Times,*; Dean Kuipers, "FBI tracking videotapers as terrorists?" *Los Angeles Times,* December 29, 2011.

1

2      12.     In recent years, the FBI's surveillance of those engaged in First Amendment

3  protected activity has extended to the surveillance of religious minorities, in particular,

4  Muslims, who have gained a high profile in the wake of 9/11. *See, e.g.,* "Sheriff hires mosque

5  foe to lead terrorism training," *USA Today*, February 15, 2012; "Former FBI agent opposed to

6  Nashville mosques leads sheriff training session on Islam," *The Commercial Appeal*, February

7  15, 2012; "Local Muslims outraged by alleged FBI surveillance, lawyers claim," *Los Angeles

8  Times*, February 23, 2011; "Lawsuit contends FBI violated rights of hundreds of Muslim

9  Americans," *Los Angeles Times,* February 22, 2011; "Muslims sue FBI for alleged First

10  Amendment violation," KPCC, February 23, 2011; Susan Saulny, "Inquiry Into FBI Raid That

11  Killed Cleric," *New York Times,* February 3, 2010; Niraj Warikoo, "Deadly FBI raid of Detroit

12  mosque prompts concern over informants: Muslims, civil rights advocates decry tactic," *Detroit

13  Free Press,* January 17, 2010; Paul Vietello and Kirk Semple, "Muslims Say FBI Tactics Sow

14  Anger and Fear," *New York Times,* December 18, 2009; Scott Shane, "American Sues FBI,

15  Saying He Was Detained in Africa," *New York Times,* November 11, 2009; "Wife and mother

16  of terror suspects says FBI tricked her," CNN, July 29, 2009; Salvador Hernandez, "Muslim

17  groups disagree that relations with FBI are 'very good,'" *Orange County Register*, June 9, 2009;

18  Sean Emery, "Rift develops between Muslims, FBI over mosque surveillance," *Orange County

19  Register,* March 26, 2009; "FBI planting spies in U.S. mosques, Muslim groups say," CNN,

20  March 20, 2009; Paloma Esquivel, "Some influential Muslim groups question FBI's actions,"

21  *Los Angeles Times,* April 20, 2009; Scott Glover, "FBI monitored members of O.C. mosques at

22  gyms, alleged informant says," *Los Angeles Times,* April 28, 2009.

23      13.     The latest movement engaged in First Amendment activity to gain widespread

24  public, political, and media attention has been the "Occupy" movement.

25      14.     There are concrete reasons to believe that the FBI has been surveilling the Occupy

26  movement. The agency issued an unclassified Intelligence Bulletin on September 14, 2011, just

27  days before the inaugural Occupy Wall Street protest on September 17, 2011, depicting the

28

1   now-iconic Occupy Wall street poster with the caption "Propaganda poster … to endorse the

2   'Day of Rage' protest."  A copy of this Intelligence Bulletin is appended hereto as Exhibit 1.  In

3   response to a FOIA request for FBI records (Request No. 1176497-001) about Occupy San

4   Francisco, the agency acknowledged that "potentially responsive documents may exist."  The

5   agency similarly has acknowledged the existence of "potentially responsive documents" to a

6   FOIA request (Request No. 1176937-001) about Occupy Wall Street.  A copy of these

7   responses from the agency are appended hereto as Exhibit 2.

8        15.      The media and the public have an appetite for understanding the extent of FBI

9   surveillance of Occupy.  Even efforts to obtain information about the federal role in the Occupy

10   crackdown have generated keen media interest.  *See, e.g.,* Dave Lindorff, "National Lawyers

11   Guild Files FOIA Requests Seeking Evidence of Federal Role in Occupy Crackdown," *Nation*

12   *of Change,* November 20, 2011; "In the Wake of Occupy Crackdown, NLG Taps Feds for

13   Information," *Common Dreams,* November 18, 2011; "National Lawyers Guild files FOIA

14   Requests, regarding OWS Crackdowns," *Huffington Post,* November 18, 2011; Rick Ellis,

15   "Civil Rights legal groups files federal request for info on 'Occupy' crackdowns," *Minneapolis*

16   *Top News Examiner,* November 17, 2011; Bay City News, "FBI Director Ducks Questions On

17   Occupy Movement During SF Talk," *SF Appeal,* November 17, 2011.

18        16.      There is great urgency in shedding light on the extent of the FBI's role in

19   surveilling Occupy activists, and in particular, on whether the FBI has complied with local and

20   national norms in monitoring those engaged in First Amendment activity.  Just last year, the

21   agency made public a new edition of its Domestic Investigations and Operations Guide, re-

22   igniting an on-going matter of public debate about whether the FBI's standards for its

23   investigations intrude unduly on civil liberties.  *See, e.g.,* Charlie Savage, "FBI Agents Get

24   Leeway to Push Privacy Bounds," *New York Times,* June 12, 2011; Judson Berger, "FBI's New

25   Rules to Give Agents More Leeway on Surveillance," Fox News, June 13, 2011; Terry Frieden,

26   "ACLU: FBI guideline proposals open door 'to all kinds of abuses,'" CNN, June 13, 2011; *see*

27   *also* Associated Press, "FBI defends guidelines for domestic surveillance," *USA Today,* July 28,

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
American Civil Liberties Union of Northern California and *San Francisco Bay Guardian v. FBI,* Case No. _____  ____

6

1  2010; Pete Yost, "FBI defends spying guidelines," *Sydney Morning Herald,* July 28, 2010; "FBI

2  Defends Guidelines Before Senate Testimony," CBS News, July 28, 2010. The information

3  sought herein would help the public assess the FBI's practice under these recently adopted

4  guidelines.

5      17.     In short, expedited processing is warranted here because there is an urgency to

6  inform the public about actual or alleged FBI surveillance of local Occupy movements and

7  requesters are primarily engaged in disseminating information. *See* 5 U.S.C.

8  §552(a)(6)(E)(v)(II); 28 CFR §16.5(d)(1)(ii). Moreover, FBI surveillance of First Amendment

9  activists and the Occupy movements are matters of widespread and exceptional media interest.

10  Whenever the government spies on political activists, the public confidence is deeply affected.

11  *See* 28 CFR §16.5(d)(1)(iv).

**Plaintiffs Submitted A FOIA Request and the FBI Granted Expedited Processing
But Has Failed to Produce Any Records**

14      18.     On March 8, 2012, Plaintiffs submitted a FOIA request to the FBI seeking

15  information about its surveillance of the Occupy movement. A copy of Plaintiffs FOIA request

16  (without exhibits) is appended hereto as Exhibit 3.

17      19.     In particular, Plaintiffs FOIA request seeks:

18          (a)     Records created, received, gathered or maintained by the FBI (including

19                  but not limited to sub-entities within the FBI such as the Joint Terrorism

20                  Task Force, the Campus Liaison Initiative, and the Academic Alliance

21                  Program) since June 1, 2011 pertaining to persons, planning, assemblies,

22                  marches, demonstrations, or any other activity associated with protest

23                  movements referring to themselves as Occupy Oakland, Occupy San

24                  Francisco, Occupy Cal, or Occupy UC Davis.

25          (b)     Intelligence Bulletins referring to the "Occupy" movement generally or

26                  any geographically specific Occupy movement.

1        (c)    Training for FBI agents regarding the Occupy movement generally or any

2                 geographically specific Occupy movement.

3        (d)    Written materials related or referring to the Occupy movement generally

4                 or any geographically specific Occupy movement, and setting forth or

5                 referring to legal reasoning or authority relied upon by the FBI with

6                 respect to its investigatory and enforcement activities.

7    20.    Plaintiffs also requested expedited processing, pursuant to 5 U.S.C. §522(a)(6)(E),

8 on the grounds that there is an "urgency to inform the public about actual or alleged federal

9 government activity" and also that this is "a matter of widespread and exceptional media interest

10 in which there exists possible questions about the government's integrity which affect public

11 confidence." 28 C.F.R. §16.5(d)(1)(ii) & (iv).

12    21.    By letter dated March 13, 2012, the FBI acknowledged receipt of Plaintiffs' FOIA

13 request. A copy of this letter is appended hereto as Exhibit 4.

14    22.    By letter dated March 26, 2012, the FBI granted Plaintiffs' request for expedited

15 processing. A copy of this letter is appended hereto as Exhibit 5.

16    23.    On May 17, 2012, Plaintiffs sent a letter to the FBI inquiring as to the status of its

17 search. A copy of this letter is appended hereto as Exhibit 6.

18    24.    As of the date of the filing of this complaint, Plaintiffs have not received any

19 response to their May 17, 2012 status inquiry.

20    25.    More than 20 working days have passed since FBI received Plaintiffs' FOIA

21 request.

22    26.    As of the date of the filing of this complaint, Plaintiffs have not received any

23 responsive documents from the FBI or any correspondence indicating when the FBI might

24 provide any documents.

25    27.    Plaintiffs have exhausted all applicable administrative remedies.

26    28.    The FBI has wrongfully withheld the requested records from Plaintiffs.

27

28

## FIRST CLAIM FOR RELIEF

### <u>Violation of Freedom of Information Act For</u>

### <u>Wrongful Withholding Of Agency Records</u>

29.     Plaintiffs incorporate paragraphs 1 through 28 above as if fully set forth herein.

30.     Defendant FBI has wrongfully withheld agency records requested by Plaintiffs under FOIA and has failed to comply with the statutory time for the processing of FOIA requests.

31.     Plaintiffs have exhausted the applicable administrative remedies with respect to FBI's wrongful withholding of the requested records.

32.     Plaintiffs are entitled to injunctive relief with respect to the release and disclosure of the requested documents because Defendant FBI continues to improperly withhold agency records in violation of FOIA.  The Plaintiffs will suffer irreparable injury from, and have no adequate legal remedy for, the FBI's illegal withholding of government documents pertaining to the subject of Plaintiffs' FOIA request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court:

A.     Order Defendant FBI to process immediately the requested records in their entirety;

B.     Order Defendant FBI to make the requested records in their entirety available to Plaintiffs promptly upon completion of its processing of such records;

C.     Provide for expeditious proceedings in this action;

D.     Enter a preliminary and permanent injunction against the FBI ordering the relief requested herein;

E.     Declare that FBI's failure to disclose the records requested by Plaintiffs is unlawful;

//

//

F.   Award Plaintiffs' their litigation costs and reasonable attorney's fees incurred in this action;

G.   Grant such other relief as the Court may deem just and proper.

Dated: July 17, 2012                    By: _____
                                              Linda Lye


Michael Risher
Linda Lye
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

Attorneys for Plaintiffs

# Exhibit 1

**UNCLASSIFIED//FOR OFFICIAL USE ONLY**



FEDERAL BUREAU OF INVESTIGATION
INTELLIGENCE BULLETIN
Directorate of Intelligence/Cyber Intelligence Section

14 September 2011

**(U//FOUO) Anonymous' Participation in "Day of Rage" Protest May Coincide with Cyber Attack**

(U//FOUO) The FBI assesses that the hacktivist group Anonymous is likely to participate in the "Day of Rage" protest scheduled for 17 September 2011 in New York City's financial district. While the extent of group members' participation in the event is unknown, in late August 2011 Anonymous endorsed the event through propaganda consisting of a video posted on YouTube and a campaign poster, as well as references in their Twitter accounts.[1]

UNCLASSIFIED

(U//FOUO) In the past, Anonymous has been involved in physical protests that coincided with planned cyber attacks. This could indicate an intention to conduct a cyber attack in conjunction with the "Day of Rage" protest.



- (U//FOUO) In August 2011, Anonymous planned multiple protests against San Francisco's Bay Area Rapid Transit (BART). These physical protests, which became violent and resulted in numerous arrests, were combined with cyber intrusions that defaced Web sites and compromised the personal information of BART police officers.[2]

- (U//FOUO) Anonymous planned to conduct a distributed denial of service (DDoS)[a] attack on Quantico facilities on 20 March 2011 to coincide with the physical protests at the base against the incarceration of Private First Class Bradley Manning.[3] While a physical protest did occur, there was no successful DDoS attack.

(U) Propaganda poster used by Anonymous to endorse the "Day of Rage" protest.

(U) Anonymous plans to release a new DDoS tool to the public called RefRef in September 2011, according to open source reporting. Anonymous has tested this tool with successful DDoS attacks on WikiLeaks, Pastebin[b], and 4chan.org[c].[4] Currently, it is unknown if the release date

---

[a] (U) A distributed denial of service is a type of attack that floods a network with so many requests for information that regular service is slowed or interrupted.
[b] (U) Pastebin is a Web application that allows users to post portions of text for public viewing.

**UNCLASSIFIED//FOR OFFICIAL USE ONLY**

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## (U) Endnotes

[1] (U) Online Article; Dave Neal; 25 August 2011; "Anonymous Sets its Sights on Wall Street"; www.theinquirer.net/inquirer/news/2104394/anonymous-sets-sights-wall-street; last accessed 8 September 2011.
[2] (U) Online Article; Vivian Ho; 22 August 2011; "Anonymous Planning Another BART Protest"; http://articles.sfgate.com/2011-08-22/news/29913744_1_sony-s-playstations-network-supporters-civic-center-station; last accessed 12 September 2011.
[3] (U) Online Article; CBC News; 10 March 2011; "Pro-WikiLeaks Activists Target Base Holding Bradley Manning"; http://www.cbc.ca/news/world/story/2011/03/10/anonymous-manning-quantico-ddos.html; last accessed 13 September 2011.
[4] (U) Online Article; Steve Ragan; 1 September 2011; "WikiLeaks Knocked Offline by Anonymous – RefRef due Sept. 17"; www.thetechherald.com/article.php/201135/7560/WikiLeaks-knocked-offline-by-Anonymous; last accessed 8 September 2011.
[5] (U) Online Article; Anthony Martin; 21 August 2011; "Beware the U.S. 'Day of Rage' September 17"; www.examiner.com/conservative-in0national/beware-the-u-s-day-of-rage-september-17; last accessed 8 September 2011.

UNCLASSIFIED//FOR OFFICIAL USE ONLY

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## FBI Customer Satisfaction Survey

Please take a moment to complete this survey and help evaluate the quality, value, and relevance of our intelligence product. Your response will help us serve you more effectively and efficiently in the future. Thank you for your cooperation and assistance. Please return to:
**Federal Bureau of Investigation**
**Editorial Review Unit**
**935 Pennsylvania Ave, NW, Room 11079C**
**Washington, DC 20535**

**Customer and Product Information**
Intelligence Product Title: (U//FOUO) Anonymous' Participation in "Day of Rage" Protest May Coincide with Cyber Attack
Dated: 14 September 2011
Customer Agency: _____

**Relevance to Your Intelligence Needs**

1. The product increased my knowledge of an issue or topic. (Check one)
   ___ 5. Strongly Agree
   ___ 4. Somewhat Agree
   ___ 3. Neither Agree or Disagree
   ___ 2. Somewhat Disagree
   ___ 1. Strongly Disagree

**Actionable Value**

2. The product helped me decide on a course of action. (Check one)
   ___ 5. Strongly Agree
   ___ 4. Somewhat Agree
   ___ 3. Neither Agree or Disagree
   ___ 2. Somewhat Disagree
   ___ 1. Strongly Disagree

**Timeliness Value**

3. The product was timely to my intelligence needs. (Check one)
   ___ 5. Strongly Agree
   ___ 4. Somewhat Agree
   ___ 3. Neither Agree or Disagree
   ___ 2. Somewhat Disagree
   ___ 1. Strongly Disagree

**ERU INTERNAL USE ONLY**
Product Tracking #: __IB 1393_____
Return To: _____

Comments (please use reverse or attach separate page if needed): _____

UNCLASSIFIED//FOR OFFICIAL USE ONLY

# Exhibit 2

Twitter



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

December 6, 2011

MR. GEOFFREY KING



Request No.: 1176497- 001
Subject: OCCUPY SAN FRANCISCO

Dear Mr. King:

The purpose of this letter is to advise you of the change in status of your Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). On November 22, 2011 you were mailed a letter informing you that the FBI could not locate any main file records responsive to your request. Upon further review, FBI Records Management Division (RMD) has determined that potentially responsive documents may exist. Your request has been re-opened under the FOIPA number listed above and we are currently in the process of searching, gathering, and processing any newly discovered material so that it may be reviewed for responsiveness.

You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

December 6, 2011

YANA KUNICHOFF
TRUTHOUT.ORG

Request No.: 1176937- 001
Subject: OCCUPY WALL STREET

Dear Yana Kunichoff:

The purpose of this letter is to advise you of the change in status of your Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). On 11/15/2011 you were mailed a letter informing you that the FBI could not locate any records responsive to your request. Upon further review, FBI Records Management Division (RMD) has determined that potentially responsive documents exist. Your request has been re-opened under the FOIPA number listed above and we are currently in the process of searching, gathering, and processing any newly discovered material so that it may be reviewed for responsiveness.

You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

# Exhibit 3



March 8, 2012

Via Certified Mail

Federal Bureau of Investigation
Record Information/Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Federal Bureau of Investigation – San Francisco
450 Golden Gate Ave, 13ᵗʰ Floor
San Francisco, CA 94102-9253

   Re:  Freedom of Information Act Request
       *Expedited Processing Requested*

Dear Freedom of Information Officer:

  The American Civil Liberties Union of Northern California (ACLU-NC) and the *San Francisco Bay Guardian* (*Bay Guardian*) submit this expedited Freedom of Information Act (FOIA) request for records in the possession of the Federal Bureau of Investigation pertaining to the investigation and surveillance of "Occupy" movements in Northern California, in particular, Occupy Oakland, Occupy San Francisco, Occupy Cal, and Occupy UC Davis. The ACLU-NC and *Guardian*, submit this request pursuant to the FOIA, 5 U.S.C. § 552, implementing regulations 8 CFR §103.10 and 6 CFR §5, and any other applicable regulations.

  Publicly disclosed FBI records reveal that the FBI issued an Intelligence Bulletin regarding protest activity in connection with the nationwide movement now known as "Occupy Wall Street." The Occupy movement has spread across the country. Its activism around urgent political and economic issues of the day has garnered extensive and widespread media attention, as has the law enforcement response to Occupy protests. The FBI's role in investigating and surveilling Occupy movements goes to the heart of pressing, and unfortunately constantly recurring questions of widespread media interest, such as the federal government's role in monitoring or chilling protected political activism. It is imperative that the public gain a full and complete understanding of the scope of FBI surveillance of Occupy movements in Northern California – where some of the country's most brutal police crackdowns have occurred --and whether FBI activities in connection with Occupy comport with legal and ethical guidelines.

MICHELLE A. WELSH, *CHAIRPERSON* | SUSAN FAHRER, JARAH SAGAN, FARAH BROWN, ALLEN ASCH, *VICE CHAIRPERSONS* | KENNETH MORDIAN, *SECRETARY/TREASURER*
ABDI SOLTANI, *EXECUTIVE DIRECTOR* | KELLI EVANS, *ASSOCIATE DIRECTOR* | CHERI BRYANT, *DEVELOPMENT DIRECTOR* | SHAYNA GELENDER, *ORGANIZING & CAPACITY BUILDING DIRECTOR*
LAURA SAPONARA, *COMMUNICATIONS DIRECTOR* | ALAN SCHLOSSER, *LEGAL DIRECTOR* | MARGARET C. CROSBY, ELIZABETH O., LINDA LYE, JULIA HARUMI MASS, MICHAEL RISHER, TORY STELLE, *STAFF ATTORNEYS*
ALLEN HOPPER, NATASHA MINSKER, NICOLE A. OZER, DIANA FAYE VERSHBOW, *POLICY DIRECTORS* | STEPHEN V. BOMSE, *GENERAL COUNSEL*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
39 DRUMM STREET, SAN FRANCISCO, CA   |  (415) 621-2493  |  (415) 255-1478  |  TY (415) 863-7832  |  WWW.ACLUNC.ORG

*FBI - Freedom of Information Act Request*
*March 8, 2012*
*Page 2*

I.   REQUEST FOR INFORMATION

We seek disclosure of agency records[1] in your possession,[2] pertaining to Occupy Oakland, Occupy San Francisco, Occupy Cal,[3] or Occupy UC Davis.[4]  In particular, we seek the following:

1)   Records created, received, gathered or maintained by the FBI (including but not limited to sub-entities within the FBI such as the Joint Terrorism Task Force, the Campus Liaison Initiative, and the Academic Alliance Program) since June 1, 2011 pertaining to persons, planning, assemblies, marches, demonstrations, or any other activity associated with protest movements referring to themselves as Occupy Oakland, Occupy San Francisco, Occupy Cal, or Occupy UC Davis.

2)   Intelligence Bulletins referring to the "Occupy" movement generally or any geographically specific Occupy movement.

3)   Training for FBI agents regarding the Occupy movement generally or any geographically specific Occupy movement.

4)   Written materials related or referring to the Occupy movement generally or any geographically specific Occupy movement, and setting forth or referring to legal reasoning or authority relied upon by the FBI with respect to its investigatory and enforcement activities.

II.   REQUEST FOR EXPEDITED PROCESSING

Title 5 U.S.C. §552(a)(6)(E) provides for expedited processing of requests for information in cases in which the person requesting the records demonstrates a compelling need. By statute, for requests by persons primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged federal government activity constitutes a "compelling need."  5 U.S.C. §552(a)(6)(E)(v)(II); 28 CFR §16.5(d)(1)(ii).  In addition, Department of Justice regulations state that FOIA requests are entitled to expedited processing when information requested involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 CFR §16.5(d)(1)(iv).

---

[1] The term "records" as used herein includes all records preserved in written or electronic form, including but not limited to:  correspondence, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, training materials, manuals, studies, text messages, social networking posts or messages.  To the extent the agency chooses to redact identifying information of individuals, we request that individuals be identified with an alphanumeric code so that multiple records related to the same individual can be recognized as such.
[2] Requestors seek records located either at FBI headquarters or at any FBI field office.
[3] By "Occupy Cal," we mean the Occupy protest at the University of California at Berkeley.
[4] By "Occupy UC Davis," we mean the Occupy protest at the University of California at Davis.

Requesters ACLU-NC and *Bay Guardian* are primarily engaged in disseminating information and, for reasons made clear below, there is urgency to inform the public concerning federal government activity in connection with the FBI's surveillance of Occupy protests. The Occupy protests and ensuing law enforcement handling of these protests has dominated the headlines, especially here in Northern California where police crackdowns on peaceful protesters has generated intense public outrage and scrutiny. FBI surveillance of political activists, on which the instant FOIA request is intended to shed greater light, has long been an issue of widespread media interest and intense public concern. The public has an urgent need to understand the scope of federal government surveillance of political protest, as such activity raises core values in a democratic society. The public therefore has a particularly heightened interest in, and there has already been extensive media coverage, about the federal government's role in monitoring the Occupy movement.

A.    Requesters

The ACLU-NC is an affiliate of the ACLU, a national organization that works to protect the civil liberties of all people, including the safeguarding of the basic constitutional rights to privacy, free expression, and due process of law. The ACLU-NC is responsible for serving the population of northern California. The communications department of the ACLU-NC is the division of the ACLU-NC that is responsible for disseminating information to the public about issues of concern to the ACLU-NC and to the general public.

The *Bay Guardian* is the largest circulation newsweekly in northern California, with an audited weekly distribution of 100,000. Is website (sfbg.com) receives about 350,000 page views per month. The paper is locally owned, independent, and has been published continuously since 1966.

B.    Widespread Media Interest and Concerns Regarding Government Activities

The FBI's surveillance of those engaged in constitutionally protected activity is a matter of great public concern because of the dramatic implications for core democratic values when the federal government spies on critics, dissidents, and those who espouse unpopular views. Such conduct by the FBI has been the subject of numerous news articles that demonstrate the public interest in and concerns about improper government intrusion on First Amendment freedoms.

The FBI has a long history of, and the media has extensively covered its, surveillance of First Amendment protected activity, especially of political activists. *See, e.g.,* Associated Press, "Fusion Center in Tennessee draws trends on crimes," *Elizabethon Star,* February 27, 2012 (Appendix A, Tab 16); Eric Lichtblau, "FBI Watched Activist Group, New Files Show," *New York Times,* December 20, 2005 (Appendix A, Tab 17); James Ridgeway, "Green is the New Red: The Crackdown on Environmental Activists," *Mother Jones,* May 11, 2011 (Appendix A, Tab 18); Colin Moynihan and Scott Shane, "For Anarchist, Details of Life as FBI Target," *New York Times,* May 28, 2011 (Appendix A, Tab 19); Charlie Savage, "FBI Casts Wide Net Under Relaxed Rules for Terror Inquiries, Data Show," *New York Times,* (Appendix A, Tab 20); Dean

Kuipers, "FBI tracking videotapers as terrorists?" *Los Angeles Times,* December 29, 2011 (Appendix A, Tab 21).

In recent years, the FBI's surveillance of those engaged in First Amendment protected activity has extended to the surveillance of religious minorities, in particular, Muslims, who have gained a high profile in the wake of 9/11. *See, e.g.,* "Sheriff hires mosque foe to lead terrorism training," *USA Today,* February 15, 2012 (Appendix A, Tab 1); "Former FBI agent opposed to Nashville mosques leads sheriff training session on Islam," *The Commercial Appeal,* February 15, 2012 (Appendix A, Tab 2); "Local Muslims outraged by alleged FBI surveillance, lawyers claim," *Los Angeles Times,* February 23, 2011 (Appendix A, Tab 3); "Lawsuit contends FBI violated rights of hundreds of Muslim Americans," *Los Angeles Times,* February 22, 2011 (Appendix A, Tab 4); "Muslims sue FBI for alleged First Amendment violation," KPCC, February 23, 2011 (Appendix A, Tab 5); Susan Saulny, "Inquiry Into FBI Raid That Killed Cleric," *New York Times,* February 3, 2010 (Appendix A, Tab 6); Niraj Warikoo, "Deadly FBI raid of Detroit mosque prompts concern over informants: Muslims, civil rights advocates decry tactic," *Detroit Free Press,* January 17, 2010 (Appendix A, Tab 7); Paul Vietello and Kirk Semple, "Muslims Say FBI Tactics Sow Anger and Fear," *New York Times,* December 18, 2009 (Appendix A, Tab 8); Scott Shane, "American Sues FBI, Saying He Was Detained in Africa," *New York Times,* November 11, 2009 (Appendix A, Tab 9); "Wife and mother of terror suspects says FBI tricked her," CNN, July 29, 2009 (Appendix A, Tab 10); Salvador Hernandez, "Muslim groups disagree that relations with FBI are 'very good,'" *Orange County Register,* June 9, 2009 (Appendix A, Tab 11); Sean Emery, "Rift develops between Muslims, FBI over mosque surveillance," *Orange County Register,* March 26, 2009 (Appendix A, Tab 12); "FBI planting spies in U.S. mosques, Muslim groups say," CNN, March 20, 2009 (Appendix A, Tab 13); Paloma Esquivel, "Some influential Muslim groups question FBI's actions," *Los Angeles Times,* April 20, 2009 (Appendix A, Tab 14); Scott Glover, "FBI monitored members of O.C. mosques at gyms, alleged informant says," *Los Angeles Times,* April 28, 2009 (Appendix A, Tab 15).

The latest movement engaged in First Amendment activity to gain widespread public, political, and media attention has been the "Occupy" movement. It is beyond dispute that Occupy Wall Street and the Occupy movements it has inspired across the country have dominated headlines. A search on the *New York Times* website for the term "Occupy Wall Street" produces over 10,000 results from the last 30 days alone. In the first full week of October 2011, shortly after the Occupy movement began on September 17, 2011, Occupy protests alone consumed a full "7 percent of the nation's collective news coverage." "Occupy Movement (Occupy Wall Street), *New York Times,* Updated February 28, 2012 (Appendix A, Tab 22).

There are concrete reasons to believe that the FBI has been surveilling the Occupy movement. The agency issued an unclassified Intelligence Bulletin on September 14, 2011, just days before the inaugural Occupy Wall Street protest on September 17, 2011, depicting the now-iconic Occupy Wall street poster with the caption "Propaganda poster … to endorse the 'Day of Rage' protest" (Appendix A, Tab 23). In response to a FOIA request for FBI records (Request No. 1176497-001) about Occupy San Francisco, the agency acknowledged that "potentially

responsive documents may exist" (Appendix A, Tab 24). The agency similarly has acknowledged the existence of "potentially responsive documents" to a FOIA request (Request No. 1176937-001) about Occupy Wall Street (Appendix A, Tab 25).

Further, the media has reported that the FBI has investigated seemingly isolated incidents, perhaps because of agency interest in the connection of those incidents to Occupy. *See, e.g.,* Kelsey Whipple, "Occupy Denver: Protester says FBI agents visited his home to investigate car bomb rumor," *Denver Westword,* December 20, 2011 (Appendix A, Tab 26); "FBI called to investigate isolated Occupy Portland arrest," *Indybay,* December 12, 2011 (Appendix A, Tab 27); "FBI investigates Occupy Portland officer injury," KGW, December 11, 2011 (Appendix A, Tab 28). The media has also reported about an informant providing intelligence about Occupy to FBI's cyber security team. Adrian Chen, "Meet the Guy Who Snitched on Occupy Wall Street to the FBI and NYPD," *Gawker,* October 15, 2011 (Appendix A, Tab 29).

Potential federal involvement in an apparently coordinated crackdown on Occupy movements last fall by local cities across the country generated widespread domestic and even international media interest. *See, e.g.,* Rick Ellis, "'Occupy' crackdowns coordinated with federal law enforcement officials," *Minneapolis Top News Examiner,* November 15, 2001 (Appendix A, Tab 30); Allison Kilkenny, "Did Mayors, DHS Coordinate Occupy Attacks?" *In These Times,* November 16, 2011 (Appendix A, Tab 31); "Surprise, Homeland Security Coordinates #OWS Crackdowns," *Wonkette,* November 15, 2011 (Appendix A, Tab 32); "Homeland Security, FBI, Others Advise US Conf Mayors Coordinated Occupy Crackdowns?" *Huffington Post,* November 15, 2011 (Appendix A, Tab 33); Naomi Wolf, "The shocking truth about the crackdown on Occupy," *The Guardian,* November 25, 2011 (Appendix A, Tab 34); Brack Knickerbocker, "Officials crack down on Occupy Wall Street camps around the country," *Christian Science Monitor,* November 12, 2011 (Appendix A, Tab 35); Jim Gold, "Mayors deny colluding on 'Occupy' crackdowns," MSNBC, November 15, 2011 (Appendix A, Tab 36); Andy Kroll, "Mayors and Cops Traded Strategies for Dealing With Occupy Protesters," *Mother Jones,* November 16, 2011 (Appendix A, Tab 37); Christopher Robbins, "Justice Dept: Homeland Security Advised Raids On Occupy Wall Street Camps," *Gothamist,* November 16, 2011 (Appendix A, Tab 38); Adam Clark Estes, "Cities Across the Nation Are Comparing Notes on Occupy Protests," *Atlantic Wire,* November 15, 2011 (Appendix A, Tab 39).

The media and the public have an appetite for understanding the extent of FBI surveillance of Occupy. Even efforts to obtain information about the federal role in the Occupy crackdown have generated keen media interest. *See, e.g.,* Dave Lindorff, "National Lawyers Guild Files FOIA Requests Seeking Evidence of Federal Role in Occupy Crackdown," *Nation of Change,* November 20, 2011 (Appendix A, Tab 40); "In the Wake of Occupy Crackdown, NLG Taps Feds for Information," *Common Dreams,* November 18, 2011 (Appendix A, Tab 41); "National Lawyers Guild files FOIA Requests, regarding OWS Crackdowns," *Huffington Post,* November 18, 2011 (Appendix A, Tab 42); Rick Ellis, "Civil Rights legal groups files federal request for info on 'Occupy' crackdowns," *Minneapolis Top News Examiner,* November 17,

2011 (Appendix A, Tab 43); Bay City News, "FBI Director Ducks Questions On Occupy Movement During SF Talk," *SF Appeal,* November 17, 2011 (Appendix A, Tab 44).

There is great urgency in shedding light on the extent of the FBI's role in surveilling Occupy activists, and in particular, on whether the FBI has complied with local and national norms in monitoring those engaged in First Amendment activity. Just last year, the agency made public a new edition of its Domestic Investigations and Operations Guide, re-igniting an ongoing matter of public debate about whether the FBI's standards for its investigations intrude unduly on civil liberties. *See, e.g.,* Charlie Savage, "FBI Agents Get Leeway to Push Privacy Bounds," *New York Times,* June 12, 2011 (Appendix A, Tab 45); Judson Berger, "FBI's New Rules to Give Agents More Leeway on Surveillance," Fox News, June 13, 2011 (Appendix A, Tab 46); Terry Frieden, "ACLU: FBI guideline proposals open door 'to all kinds of abuses,'" CNN, June 13, 2011 (Appendix A, Tab 47); *see also* Associated Press, "FBI defends guidelines for domestic surveillance," *USA Today,* July 28, 2010 (Appendix A, Tab 48); Pete Yost, "FBI defends spying guidelines," *Sydney Morning Herald,* July 28, 2010 (Appendix A, Tab 49); "FBI Defends Guidelines Before Senate Testimony," CBS News, July 28, 2010 (Appendix A, Tab 50). The information sought herein would help the public assess the FBI's practice under these recently adopted guidelines.

The information is also urgently relevant here in San Francisco, where FBI surveillance of First Amendment activists, under the guise of fighting terrorism, remains a current topic of public and media interest and is the subject of pending legislation. *See, e.g.,* "Local control of cops: Legislation seeks to prevent SFPD from working with the FBI to spy on lawful citizens," *San Francisco Bay Guardian,* February 7, 2012 (Appendix A, Tab 51); Ari Burack, "SFPD's work with FBI terror unit questioned," *San Francisco Examiner,* January 24, 2012 (Appendix A, Tab 52); Rachel Gordon, "SFPD's work with FBI unit may get more scrutiny," *San Francisco Chronicle,* January 25, 2012 (Appendix A, Tab 53); G.W. Schulz, "SF official wants to restrict police role in terrorism probes," *California Watch,* January 31, 2012 (Appendix A, Tab 54).

In short, expedited processing is warranted here because there is an urgency to inform the public about actual or alleged FBI surveillance of local Occupy movements and requesters are primarily engaged in disseminating information. *See* 5 U.S.C. §552(a)(6)(E)(v)(II); 28 CFR §16.5(d)(1)(ii). Moreover, FBI surveillance of First Amendment activists and the Occupy movements are matters of widespread and exceptional media interest. Whenever the government spies on political activists, the public confidence is deeply affected. *See* 28 CFR §16.5(d)(1)(iv). In these regards, this request is very similar to another FOIA request by requesters ACLU-NC and *Bay Guardian* on FBI surveillance (in that case, its surveillance of Muslim communities) as to which the agency granted expedited processing, *See* FOPIA Request No. 1144839-00.[5]

---

[5] *See also ACLU-NC, et al. v. Dept. of Defense,* 2006 WL 1469418, Case No. 06-01698 (N.D. Cal. May 25, 2006) (ordering Department of Defense to comply with request for expedited processing by ACLU-NC and *Bay Guardian*).

*FBI - Freedom of Information Act Request*
*March 8, 2012*
*Page 7*

III.    REQUEST FOR WAIVER OF PROCESSING FEES

We request a waiver of process fees. In a recent request by requesters ACLU-NC and *Bay Guardian*, the FBI granted the fee waiver. *See* FOPIA Request No. 1144839-000. Such a waiver is appropriate here for two reasons.

First, the *Bay Guardian* and communications department of the ACLU-NC are "representative[s] of the news media." Fees associated with the processing of this request should therefore be "limited to reasonable standard charges for document duplication." 5 U.S.C. §552(a)(4)(A)(ii)(II).

As noted above, the *Bay Guardian*, is the largest circulation newsweekly in northern California, with an audited weekly distribution of 100,000. Its website receives about 350,000 page views per month. The paper is locally owned, independent, and has been continuously published since 1966. The paper covers breaking news, does detailed investigative reporting, publishes editorials and covers arts, entertainment and lifestyle issues. The *Bay Guardian* has received more than 100 state, local, and national awards for journalistic excellence. Executive Editor Tim Redmond, for example, is the recipient of the 2012 Professional Journalist award from the Society of Professional Journalists, Northern California Chapter, for his investigation of state agencies' legally questionable acquisitions of a drug used for lethal injections that is no longer produced in the United States, an investigative series based in part on documents uncovered by the *Bay Guardian* and ACLU-NC in FOIA requests to various federal agencies. The *Bay Guardian* is a member of the California Newspaper Publishers Association and the Association of Alternative Newsweeklies.

Similarly, the ACLU-NC's communication department publishes newsletters, news briefings, right to know materials, and other materials that are disseminated to the public. Its material is widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee. The ACLU-NC's communications department also disseminates information through the website http://www.aclunc.org, which had XX visitors who viewed XX pages in 2011. This website addresses civil liberties issues in depth and provides features on civil liberties issues on which the ACLU-NC is focused. ACLU-NC staff persons are frequent spokespersons in television and print media and make frequent public presentations at meetings and events. Finally, the ACLU-NC's communications department disseminates information through a newsletters which is distributed to subscribers by mail. Due to these extensive publication activities, the ACLU-NC is a "representative of the news media" under the FOIA and agency regulations.[6]

The records requested are not sought for commercial use.

---

[6] Courts have found that organizations with missions similar to that of the ACLU and that engage in similar information dissemination activities are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F.Supp.2d 246, 260 (D.D.C. 2005).

*FBI - Freedom of Information Act Request*
*March 8, 2012*
*Page 8*

Second, a fee waiver for duplication costs should be granted for the independent reason that disclosure of the requested information is in the public interest. *See* 5 U.S.C. §552(a)(4)(ii)(II)-(iii). It will further public understanding of government conduct, in particular, the FBI's policies, practices, and methods of surveillance, and the extent to which the BI is currently targeting activists engaged in First Amendment activity for investigations and assessments.

The ACLU-NC's communications department is a division of a nonprofit 501(c)(3) organization, and both the ACLU-NC's communications department and the *Bay Guardian* are "representative[s] of the news media." They are well situated to disseminate information gained through this request to the public, to affected communities and to political and religious organizations.

If the fee waivers are denied, the requesters are prepared to pay fees up to $25 and request to be informed of further fees that may be charged, but reserve the right to appeal a denial of fee waivers.

                    *          *          *

If this request for information is denied in whole or in part, we ask that you justify all deletions by reference to specific provisions of the Freedom of Information Act. We expect you to release all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information.

Thank you for your prompt attention to this matter. Please furnish all applicable records to Linda Lye, American Civil Liberties Union of Northern California, 39 Drumm Street, San Francisco, California, 94111, telephone 415 621 2493.

I affirm that the information provided supporting the request for expedited processing and the fee waiver is true and correct to the best of my knowledge and belief.

Sincerely,

Linda Lye
Staff Attorney
ACLU of Northern California

Also on behalf of
*San Francisco Bay Guardian*

# Exhibit 4



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 13, 2012

MS. LINDA LYE
ACLU OF NORTHERN CALIFORNIA
39 DRUMM STREET
SAN FRANCISCO, CA 94111

FOIPA Request No.: 1184877- 000
Subject: OCCUPY MOVEMENT /
NORTHERN CALIFORNIA

Dear Ms. Lye:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☐ This FOIPA request has been received at FBI Headquarters for processing.

☒ This FOIPA request has been received at the San Francisco Field Office and forwarded to FBI Headquarters for processing.

☒ We are searching the indices to our Central Records System for the information responsive to this request. You will be informed of the results in future correspondence.

☒ Your request for a fee waiver is being considered and you will be advised of the decision at a later date.

☒ Please check for the status of your FOIPA request at www.fbi.gov/foia

The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

# Exhibit 5



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

March 26, 2012

MS. LINDA LYE
ACLU OF NORTHERN CALIFORNIA
39 DRUMM STREET
SAN FRANCISCO, CA 94111

FOIPA Request No.: 1184877- 000
Subject: OCCUPY MOVEMENT /
NORTHERN CALIFORNIA

Dear Ms. Lye:

This is in response to your request to the U.S. Department of Justice (DOJ), Federal Bureau of Investigation (FBI) Headquarters, for the expedition of your Freedom of Information Act (FOIA) request dated March 8, 2012. Your request seeks records "pertaining to Occupy Oakland, Occupy San Francisco, Occupy Cal, or Occupy UC Davis." You requested expedite processing pursuant to the Department of Justice standard permitting expedition for requests involving "(a)n urgency to inform the public about an actual or alleged federal government activity" made by a person primarily engaged in disseminating information, and where "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 28 C.F.R. §16.5 (d)(1)(ii) and (d)(1)(iv). Your request for expedition has been approved.

By a separate letter dated March 13, 2012, the FBI acknowledged your FOIA request and advised you that your FOIA request has been assigned FOIA Request No. 1184877-000, and we have begun to conduct a search for potentially responsive records. Once the FBI completes its search for all records potentially responsive to your FOIA request, you will be advised as to the outcome of this search effort.

With respect to the portion of your letter seeking a waiver of the customary fees, we will make a decision once our records search is completed. In the event that your request for a fee waiver is denied, you will be notified of any applicable fees prior to the processing of any responsive records.

Very truly yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

# Exhibit 6



**AMERICAN CIVIL LIBERTIES UNION**
of

May 17, 2012

Via US Mail and Facsimile

David M. Hardy, Section Chief
Federal Bureau of Investigation
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4483
Fax: (540) 868-4391

Re:   FOIPA Request No. 1184877-000

Dear Mr. Hardy,

I write in regard to the above-referenced Freedom of Information Act request, dated March 8, 2012, on which expedited processing has been granted.  Over two months have passed from the date of our request and we have not yet received an indication as to when we can anticipate receiving any records.  This delay exceeds the twenty working day period under FOIA within which the FBI is required to notify us of a determination whether it intends to comply with our request.  *See* 5 U.S.C. §552(a)(6)(A)(i).  It also exceeds the agency's 2011 median response time of 62 days for expedited requests.  *See* Department of Justice Annual FOIA Report, FY 11, at Table VII.A ("FOIA Requests – Response Time for All Processed Perfected Requests").

We request a response at your earliest convenience.  Please feel free to call me if you have any questions.

Sincerely,

Linda Lye

MICHELLE A. WELSH, *CHAIRPERSON* | DENNIS MCNALLY, AJAY KRISHNAN, FARAH BRELVI, ALLEN ASCH, *VICE CHAIRPERSONS* | KENNETH SUGARMAN, *SECRETARY/TREASURER*
ABDI SOLTANI, *EXECUTIVE DIRECTOR* | KELLI EVANS, *ASSOCIATE DIRECTOR* | CHERI BRYANT, *DEVELOPMENT DIRECTOR* | SHAYNA GELENDER, *ORGANIZING & COMMUNITY ENGAGEMENT DIRECTOR*
LAURA SAPONARA, *COMMUNICATIONS DIRECTOR* | ALAN SCHLOSSER, *LEGAL DIRECTOR* | MARGARET C. CROSBY, ELIZABETH GILL, LINDA LYE, JULIA HARUMI MASS, MICHAEL RISHER, JORY STEELE, *STAFF ATTORNEYS*
PHYLLIDA BURLINGAME, ALLEN HOPPER, NATASHA MINSKER, NICOLE A. OZER, DIANA TATE VERMEIRE, *POLICY DIRECTORS* | STEPHEN V. BOMSE, *GENERAL COUNSEL*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
39 DRUMM STREET, SAN FRANCISCO, CA 94111 | T/415.621.2493 | F/415.255.1478 | TTY/415.863.7832 | WWW.ACLUNC.ORG

```
┌────────────────────────────────────────────┐
│ TRANSMISSION VERIFICATION REPORT            │
└────────────────────────────────────────────┘
```

```
                              TIME  : 05/17/2012 10:33
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROL0J230693
```

```
┌──────────────────────────────────────────────────────────────────┐
│  DATE,TIME              05/17  10:33                                │
│  FAX NO./NAME           15408684391                                │
│  DURATION               00:00:39                                   │
│  PAGE(S)                02                                         │
│  RESULT                 OK                                         │
│  MODE                   STANDARD                                   │
│                         ECM                                        │
└──────────────────────────────────────────────────────────────────┘
```

# ACLU

FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA  94111
415-621-2493

PRIVILEGED AND CONFIDENTIAL -- All information transmitted hereby is intended only for the use of the addressee(s) named below. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited.  Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us via the U.S. Mail.

## *FAX COVER SHEET*

DATE:   May 17, 2012

TO:     David M. Hardy, Section Chief
        Federal Bureau of Investigation
        Record/Information Dissemination Section
        170 Marcel Drive
        Winchester, VA 22602-4483
        Fax: (540) 868-4391

FROM:   Linda Lye, Staff Attorney
        Telephone:  (415) 621-2493
        Fax:  (415) 255-8437

PAGES:  2