STUART F. DELERY
    Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
    Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
    Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov

Attorneys for Defendant
Federal Bureau of Investigation

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA;<br>SAN FRANCISCO BAY GUARDIAN,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Case No. 12-cv-3728-SI<br><br>**REPLY IN SUPPORT OF DEFENDNT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:  March 15, 2013<br>Time:  9:00 a.m.<br>Place:  San Francisco U.S. Courthouse<br>Judge:  Hon. Susan Illston |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT .................................................................................................................. 3

    I.      The FBI Conducted A Search Reasonably Calculated to
           Uncover All Relevant Documents. ........................................................... 3

    II.     The FBI Properly Withheld Records That Are
           Exempt From Disclosure Under FOIA. ................................................... 7

        A.     The FBI Properly Withheld Records Pursuant to FOIA Exemption 1. ...... 7

        B.     The FBI Properly Withheld Records Pursuant to
              FOIA Exemptions 6 and 7. ................................................................. 10

             1.    Exemption 7(A) (Pending Law Enforcement Proceedings)............... 14

             2.    Exemptions 6 and 7(C) (Clearly Unwarranted and Unwarranted
                 Invasion of Personal Privacy). ........................................................ 14

             3.    Exemption 7(D) (Information from Confidential Sources)............... 19

             4.    Exemption 7(E) (Investigative Techniques and Procedures)............ 19

    III.    The Coast Guard Is Not Required to Produce Non-Responsive Materials.......... 21

CONCLUSION............................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases:**

*ACLU v. Nat'l Sec. Agency,*
  493 F.3d 644 (6th Cir. 2007) ............................................................................ 15

*Al-Haramain Islamic Found., Inc. v. Bush,*
  507 F.3d 1190 (9th Cir. 2007) .......................................................................... 15

*Bay Area Lawyers Alliance for Nuclear Arms Control v. U.S. Dep't of State,*
  818 F. Supp. 1291 (N.D. Cal. 1992) .................................................................. 8

*Binion v. U. S. Dep't of Justice,*
  695 F.2d 1189 (1983).................................................................................. 10, 11

*Boyd v. U.S. Dep't of Justice,*
  475 F.3d 381 (D.C. Cir. 2007) .......................................................................... 18

*Branch v. FBI,*
  658 F. Supp. 204 (D.D.C. 1987) ....................................................................... 15

*Brunetti v. FBI,*
  357 F. Supp. 2d 97 (D.D.C. 2004) ..................................................................... 3

*California v. NHTSA,*
  No. 06-2654 SC, 2007 WL 1342514 (N.D. Cal. May 8, 2007) ......................... 21

*Campbell v. U.S. Dep't of Justice,*
  164 F.3d 20 (D.C. Cir. 1998) .................................................................. 3, 8, 13

*Church of Scientology Int'l v. IRS,*
  995 F.2d 916 (9th Cir. 1993) ............................................................................ 10

*Church of Scientology v. U. S. Dep't of Defense,*
  611 F.2d 738 (9th Cir. 1980) ................................................................ 10, 11, 12

*Church of Scientology v. U.S. Dep't of Justice,*
  612 F.2d 417 (9th Cir. 1979) ............................................................................ 12

*Cleary v. FBI,*
  811 F.2d 421 (8th Cir. 1997) ............................................................................ 16

*Computer Prof'ls for Soc. Responsibility v. U.S. Secret Service,*
  72 F.3d 897 (D.C. Cir. 1996) ........................................................................... 15

*Council on Am.-Islamic Relations v. FBI,*
  749 F. Supp. 2d 1104 (S.D. Cal. 2010) .............................................................. 9

*Davin v. U.S. Dep't of Justice,*
  60 F.3d 1043 (3d Cir. 1995).............................................................................. 19

*Feshbach v. SEC,*
  5 F. Supp. 2d 774 (N.D. Cal. 1997) .................................................................... 7

*Fiduccia v. U.S. Dep't of Justice*,
    185 F.3d 1035 (9th Cir. 1999) ................................................................. 18

*Gabel v. IRS,*,
    134 F.3d 377 (9th Cir. 1998) ................................................................... 15

*Gordon v. FBI*,
    390 F. Supp. 2d 897 (N.D. Cal 2004) ...................................................... 18

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999) .................................................................... 16

*Hopkinson v. Shillinger*,
    866 F.2d 1185 (10th Cir. 1989) ............................................................... 10

*Hunt v. CIA*,
    981 F.2d 1116 (9th Cir. 1992) ................................................................... 7

*Jones v. FBI*,
    41 F.3d 238 (6th Cir. 1994) ..................................................................... 16

*King v. U.S. Department of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ................................................................... 8

*KTVY-TV v. United States*,
    919 F.2d 1465 (10th Cir. 1990) ............................................................... 15

*Lahr v. NTSB*,
    569 F.3d 964 (9th Cir. 2009) ................................................................... 16

*Lissner v. U. S. Customs Service*,
    241 F.3d 1220 (9th Cir. 2001) ................................................................. 16

*Manna v. U.S. Dep't of Justice*,
    51 F.3d 1158 (3d Cir. 1995) .................................................................... 15

*NARA v. Favish*,
    541 U.S. 157 (2004) ................................................................................ 17

*Neely v. FBI*,
    208 F.3d 461 (4th Cir. 2000) ................................................................... 15

*Nix v. United States*,
    572 F.2d 998 (4th Cir. 1978) ................................................................... 16

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ................................................................... 4

*Quinon v. FBI*,
    86 F.3d 122 (D.C. Cir. 1996) ................................................................... 17

*Raulerson v. Ashcroft*,
    271 F. Supp. 2d 17 (D.D.C. 2009) ............................................................. 3

*U.S. Dep't of State v. Ray*,
    502 U.S. 164 (1991) .................................................................................................... 17

*Rojem v. U.S. Dep't of Justice*,
    775 F. Supp. 6 (D.D.C. 1991) ...................................................................................... 11

*Rosenfeld v. U.S. Dep't of Justice*,
    57 F.3d 803 (9th Cir. 1995) .................................................................................. 10, 17

*Rosenfeld v. U.S. Dep't of Justice*,
    No. C 07-03240 MHP, 2008 WL 3925633 (N.D. Cal. Aug. 22, 2008) ......................... 4

*Rosenfeld v. U.S. Dep't of Justice*,
    No. C 07-03240 MHP, 2010 WL 3448517 (N.D. Cal. Sept. 1, 2010) ...................... 4, 5

*Schiffer v. FBI*,
    78 F.3d 1405 (9th Cir. 1996) .......................................................................... 14, 15, 17

*Singh v. FBI*,
    574 F. Supp. 2d 32 (D.D.C. 2008) ................................................................................ 9

*Wiener v. FBI*,
    943 F.2d 972 (9th Cir. 1991) .................................................................................. 8, 12

*Wilkinson v. FBI*,
    633 F. Supp. 336 (C.D. Cal. 1986) .............................................................................. 11

*Wilson v. U.S. Dep't of Transp.*,
    730 F. Supp. 2d 140 (D.D.C. 2010) ............................................................................ 21

*Wojtczak v. U.S. Dep't of Justice*,
    548 F. Supp. 143 (E.D. Pa. 1982) ......................................................................... 10, 12

*Yonemoto v. U.S. Dep't of Veterans Affairs*,
    686 F.3d 686 (9th Cir. 2012) ...................................................................................... 17

**Statutes and Regulations:**

5 U.S.C. § 552 ........................................................................................................... *passim*

28 U.S.C. § 533 ................................................................................................................ 11

28 U.S.C. § 534 ................................................................................................................ 11

28 C.F.R. § 0.85 ............................................................................................................... 11

STUART F. DELERY
    Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
    Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
    Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov

Attorneys for Defendant
Federal Bureau of Investigation

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; SAN FRANCISCO BAY GUARDIAN, | ) ) ) ) | Case No. 12-cv-3728-SI |
| Plaintiffs, | ) ) | **REPLY IN SUPPORT OF DEFENDNT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY ADJUDICATION** |
| v. | ) ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) | Date:  March 15, 2013 Time:  9:00 a.m. Place:  San Francisco U.S. Courthouse |
| Defendant. | ) ) | Judge:  Hon. Susan Illston |

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

    Defendant's motion for summary judgment established that the Federal Bureau of Investigation ("FBI" or "Bureau") conducted an adequate search for documents and produced to plaintiffs all non-exempt, reasonably segregable information contained within those documents. Moreover, the FBI described its search for documents, and the exemptions claimed, with enough specificity to allow plaintiffs and the Court to determine whether the search was adequate and whether the records were properly withheld under FOIA.  The law requires nothing more.

Plaintiffs nonetheless challenge the adequacy of the FBI's search by arguing that the Bureau must disprove the existence of responsive documents in any and all of its databases. But FOIA does not entitle plaintiffs to turn the tables on a government agency in this manner. Instead, agency declarations in FOIA cases are entitled to a presumption of good faith, and an agency need only show that its search was reasonable. In the context of the FBI in particular, a search of its Central Records System ("CRS") is considered to be reasonable, as that system is not merely the basis by which the FBI typically responds to FOIA requests, but is the method by which the FBI carries out its principal law enforcement mission. Moreover, nothing in its search of the CRS indicated that additional, responsive materials might exist elsewhere. So all plaintiffs can do is to throw sand in the gears by citing various "positive indications" that other, responsive documents must exist somewhere. For example, plaintiffs argue that the FBI produced more materials in response to another FOIA request than it did in response to this request. That argument, however, ignores that the other FOIA request (to which plaintiffs apparently have access to the produced documents) was different in scope than the FOIA request being litigated here. Plaintiffs similarly argue that the FBI has failed to produce various assessment forms, even though the declaration submitted in support of the Bureau's summary judgment motion specifically identified the withholding of those very forms.

Plaintiffs also challenge nearly all of the exemptions that the FBI has claimed over the documents, or portions thereof, that it has withheld. The principal argument that plaintiffs make is that the 36 page, 85 paragraph declaration that the FBI submitted in support of its summary judgment motion is insufficiently detailed. That assertion is astonishing because the FBI's declaration alone is nearly as long as the entire volume of pages that the FBI identified as responsive. (The United States Coast Guard submitted a separate, multi-page declaration regarding those pages referred to it.) The FBI has provided detailed descriptions justifying the exemptions it has claimed, and providing additional detail would reveal the very information the FBI is legitimately seeking to withhold. Plaintiffs also challenge the United States Coast Guard's redaction of non-responsive information in its documents by arguing that there is no basis to withhold it. Plaintiffs' attempt to obtain irrelevant information speaks volumes about the

invalidity of their legal arguments generally.  It also ignores the fact that, because the information plaintiffs seek is not even responsive in the first instance, the Coast Guard was under no obligation to produce it.

 For these reasons, and as set forth in more detail below, this Court should deny plaintiffs' cross-motion for summary adjudication and grant the government's summary judgment motion.

<strong>ARGUMENT</strong>

**I. The FBI Conducted A Search Reasonably Calculated to Uncover All Relevant Documents.**

 As plaintiffs concede, courts apply a "reasonableness" test to determine whether a FOIA search is adequate.  *See* Plaintiffs' Notice of Cross-Motion; Memorandum of Points and Authorities in Support of Plaintiffs' Cross-Motion for Summary Adjudication and in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 23, 01/18/2013) ("Opp.") at 8 (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)).  For the reasons set forth in its opening brief, the FBI's searches of its CRS were eminently reasonable.  The Bureau not only searched the CRS's General Indices but, "[i]n an abundance of caution . . . took an additional step to conduct a text search of the [Electronic Case File] to identify all potentially responsive main and cross-reference files" indexed to the search terms.  Declaration of David M. Hardy (Dkt. No. 22-1, 12/21/2012) ("Hardy Decl.") ¶ 21.  It is well-settled that, absent extenuating circumstances, such a search of the CRS is both reasonable and appropriate.  *See Campbell*, 164 F.3d at 28 ("When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'") (citation omitted)); *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 22 (D.D.C. 2002) ("if the FBI believes that a search of its CRS is sufficient, it need not go further"); *Brunetti v. FBI*, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (finding adequate search where FBI conducted a CRS search that produced one responsive file and noting that FBI declaration "describes in great detail the structure of the FOIA unit of the FBI and the various processes involved in implementing a search," including the CRS indices).

Plaintiffs, apparently dissatisfied with the results of the FBI's search, now seek to have the Bureau identify all of its databases and explain why each and every one of them is unlikely to house the types of records that they seek.  Plaintiffs' position that the FBI must document a search that it did not conduct rather than the search that it actually executed turns the FBI's burden in FOIA cases on its head, as "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method *of the search conducted* by the agency will suffice to demonstrate compliance with the obligations imposed by FOIA."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (emphasis added).  So plaintiffs resort to citing a series of unpublished decisions to argue that the FBI must "explain why it is reasonable not to search" each and all of its databases.  Opp. at 9-10 (citing *Rosenfeld v. U.S. Dep't of Justice*, No. C 07-03240 MHP, 2008 WL 3925633 (N.D. Cal. Aug. 22, 2008); *Rosenfeld v. U.S. Dep't of Justice*, No C 07-3240 MHP, 2010 WL 3448517 (N.D. Cal. Sept. 1, 2010)).  Even in the *Rosenfeld* decisions, however, this Court acknowledged that an agency need not "exhaustively prove that databases that were not searched do not contain responsive documents."  *Rosenfeld*, 2010 WL 3448517, at *6; *see also id.* (noting that an agency "need only demonstrate that it searched all record systems that are likely to turn up the information requested").

The Rosenfeld cases also must be read in context.  What motivated the court's decisions that the FBI must take additional steps in searching for records responsive to the FOIA request were apparent "doubts" that the court harbored about the completeness of the FBI's search in that particular case. *Id.*  There are no such "doubts" here.  To be sure, plaintiffs try to plant the seeds of doubt, referring to various databases identified in the *Rosenfeld* cases to argue that they (and others) should be searched, too (or at least the FBI should provide a detailed explanation of those databases and why a search is unnecessary).  *See* Opp. at 10.  As set forth in the Supplemental Declaration of David M. Hardy ("Hardy Supp. Decl." (attached hereto)), however, the search of "the CRS did not point to any other databases for records responsive to the request," which it "very likely" would have done if any additional records existed.  Supp. Hardy Decl. ¶ 6.  Plaintiffs' speculation that these databases "may well produce yet more responsive

documents" is therefore unfounded.  Opp. at 10.[1]

Plaintiffs also question the FBI's search based upon specific categories of documents that they were expecting to receive from the FBI, but that they did not obtain.  *See* Opp. at 11-14. For example, plaintiffs claim that the FBI should have produced to them the Intelligence Bulletin that they already had in their possession (and that they had attached to their Complaint more than a month before they received any documents from the FBI).  *See* Opp. at 11.  As the Supplemental Declaration of David Hardy indicates, however, the text of the Bulletin does not reference the Occupy movement or camps; the words "Occupy Wall Street" appears in the *image* of the poster.  Supp. Hardy Decl. ¶ 7.  As the decision to index names other than subjects, suspects, and victims is discretionary, and as the FBI only indexes information considered to be pertinent, relevant, or essential to future retrieval, a text search for "Occupy Wall Street" would not retrieve this bulletin unless it happened to be indexed with those words.  *See id.*  The failure to produce this one document therefore says nothing about the reasonableness of the FBI's search.

Plaintiffs' remaining complaints about the search fall into two categories.  First, plaintiffs cite various documents produced in response to another FOIA request to show that the FBI shared intelligence information about the Occupy movement.  *See* Opp. at 11-12.  However, and as explained in Mr. Hardy's Supplemental Declaration, the other FOIA request to which plaintiffs refer "was different in scope, thus resulting in more pages being released."  Supp. Hardy Decl. ¶ 12.  Plaintiffs themselves concede as much, noting that the other FOIA request was "apparently broader."  Opp. at 7.[2]  Plaintiffs similarly assert that "additional intelligence products exist" based on various codes or notations on documents produced in response to this

---

[1] The *Rosenfeld* cases are also distinguishable because the plaintiff in those cases was seeking older information on the activities of particular individuals, including President Reagan, thus implicating unique and different search concerns regarding the retrieval of older records and all records relating to a particular individual.  *See Rosenfeld*, 2010 WL 3448517, at *1-*2.  Those concerns do not exist here.

[2] For example, while plaintiffs sought formal "Intelligence Bulletins referring to the 'Occupy' movement generally or any geographically specific Occupy movement," their more general request for "Records" referred specifically to only "Occupy Oakland, Occupy San Francisco, Occupy Cal, or Occupy UC Davis."  *See* Opp. at 3.

and the other, broader FOIA request. *See* Opp. at 11-12. Plaintiffs, however, misapprehend the FBI's operations, as a "mention of the FBI sharing intelligence with another agency does not mean that the document becomes an intelligence analysis or planning document," but instead may simply be "documenting that intelligence was shared." Supp. Hardy Decl. ¶ 12.

Second, plaintiffs cite the FBI's Domestic Investigations and Operations Guide ("DIOG") to argue that the lack of documentation regarding the FBI's activities indicate that the FBI's search was inadequate. Opp. at 12-13. That is not the case. In particular, and according to plaintiffs, the FBI has not produced a form entitled FD-71, which the DIOG requires when an assessment is opened. *See* Opp. at 12. Plaintiffs, however, have overlooked Paragraph 81 of the initial Hardy Declaration, in which the FBI described the withholding of complaint/assessment forms in full. *See* Hardy Decl. ¶ 81. Those complaint/assessment forms included form FD-71. *See* Supp. Hardy Decl. ¶ 8. Plaintiffs similarly argue that "[t]here is no dispute that responsive documents were found in files pertaining to pending investigations." Opp. at 12. Thus, plaintiffs say, there should be documents reflecting the "opening of a predicated investigation." Opp. at 13. As noted in the initial Hardy declaration, however, the FBI did not identify any "main" files on the Occupy movement (thus indicating that there were no investigative files on the movement.). *See* Hardy Decl. ¶ 21. Instead, responsive materials were only found in cross-reference files, which generally only contain a "mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another 'main' file on a different subject matter." *See* Hardy Decl. ¶¶ 15, 21. Accordingly, and not surprisingly, the FBI has identified no documents reflecting the opening of investigations relating to the Occupy movement – the "pending investigations" to which plaintiffs refer relate to different subject matters. *See generally* Supp. Hardy Decl. ¶ 9. Finally, plaintiffs question why the FBI has not produced any documentation regarding intelligence dissemination or assistance to other agencies, such as Form FD-999. Opp. at 12-13. Once again, plaintiffs misconstrue the actions that the FBI has taken. The "assistance" provided by the FBI was the mere sharing of information; accordingly, the FBI would not expect to find – and did not find – Form FD-999. Supp. Hardy Decl. ¶ 10.

In short, the FBI's search for records responsive to plaintiffs' FOIA request was reasonable. Plaintiffs nitpick that search, but none of their criticisms has merit, much less show that the search was not reasonable. Accordingly, this Court should grant summary judgment to the FBI on the reasonableness of its search.

## II.   The FBI Properly Withheld Records That Are Exempt From Disclosure Under FOIA.

The FBI has submitted a detailed declaration describing the records it has withheld along with the rationale for applying various exemptions to those records. Plaintiffs attack the FBI's declaration as not being sufficiently detailed to allow them and the Court to assess the validity of the FBI's withholdings. As set forth in the government's opening brief, however, all of the exemptions that the government has claimed are both appropriate and well-supported.[3]

### A.   The FBI Properly Withheld Records Pursuant to FOIA Exemption 1.

FOIA Exemption 1 protects classified information from disclosure. *See* 5 U.S.C. § 552(b)(1). Plaintiffs do not dispute that the two-page intelligence note that the FBI is withholding is, in fact, classified. Instead, plaintiffs seek through declarations that which they cannot obtain directly: A description of the intelligence note that is so detailed that it reveals the very information which is classified. Such a description would defeat the purpose of Exemption 1 in particular, and FOIA exemptions generally.

Notwithstanding the "substantial weight" that courts are required to accord agency affidavits relating to national security, *see Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992), plaintiffs blithely assert that "[c]ourts have not hesitated to reject (b)(1) claims where, as here, the government merely recites a boilerplate list of harms to national security without explaining why those harms could reasonably be expected to follow from disclosure of the information in the specific document it seeks to withhold." Opp. at 15. But the cases that plaintiffs cite for this

---

[3] In the conclusion of their brief, plaintiffs assert that the Court should grant summary adjudication regarding the exemptions that the FBI has claimed. Opp. at 25 (citing *Feshbach v. SEC*, 5 F. Supp. 2d 774, 787 (N.D. Cal. 1997)). In *Feshback*, however, the SEC attempted to "discharge its burden with unsupported assertions in its moving papers [and] conclusory statements of a single declarant regarding only one of many categories of documents withheld." *Feshbach*, 5 F. Supp. 2d at 786. That certainly is not the case here.

proposition are not merely distinguishable; they affirmatively demonstrate that the FBI's declaration here was more than sufficient to meet its burden. For example, in *Wiener v. FBI*, the Bureau failed to "describe any particular withheld document, identify the kind of information found in that document that would expose the confidential sources, or describe the injury to national security that would follow from disclosure of the confidential source of the particular document." *Wiener v. FBI*, 943 F.2d 972, 981 (9th Cir. 1991). In *Campbell v. U.S. Department of Justice*, which involved national security exemptions over Hoover-era documents, the FBI's declaration did not contain any language "suggesting that the FBI tailored its response to a specific set of documents," much less "draw any connection between the documents at issue and the general standards that govern the national security exemption"; instead, the declaration simply said "that disclosure of intelligence methods is undesirable." *Campbell*, 164 F.3d at 30-31. In *King v. U.S. Dep't of Justice*, the FBI did not even attempt to describe individual documents, but instead relied upon a coding system that merely described categories of information and the types of harm that would result from the release of documents within a given category. *King v. U.S. Department of Justice*, 830 F.2d 210, 219-21 & n.82 (D.C. Cir. 1987). And plaintiffs themselves describe *Bay Area Lawyers Alliance for Nuclear Arms Control v. Department of State* as a case in which the agency "never explain[ed] what information in the memo could harm national security, or how." Opp. at 15 (quoting *Bay Area Lawyers Alliance for Nuclear Arms Control v. U.S. Dep't of State*, 818 F. Supp. 1291, 1298 (N.D. Cal. 1992)).

Notwithstanding plaintiffs' assertion, the Hardy declaration the FBI previously submitted here is not "exactly like" the inadequate declarations used in the cases plaintiffs cite. Opp. at 15. Over the course of the declaration's six pages – *which is three times longer than the two-page document at issue* – Mr. Hardy sets forth in detail why application of Exemption 1 is necessary to protect the national security. Among other things, the declaration states that disclosure of the information in these documents "would reveal the actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets." Hardy Decl. ¶ 34.

The declaration describes the information as "very specific in nature, provided during a specific time period, and known to very few individuals."  *Id.*  Disclosure of this information could not only "allow hostile entities to discover the current intelligence gathering methods used" and FBI intelligence priorities, but could "reveal current specific targets of the FBI's national security investigations."  *Id.* ¶ 35.

The declaration also delves into detail regarding the specific information withheld.[4]  As for the intelligence activities, the declaration notes that the withheld information relates to "a specific individual or organization of national security interest," the disclosure of which "could reasonably be expected to cause serious damage to the national security."  Hardy Decl. ¶ 39.  Moreover, the withheld information "pertains to a classified intelligence source."  *Id.* ¶ 41.  The declaration describes the withheld information and material provided by or related to the source as so specific that, "if disclosed, [it] reasonably could be expected to reveal the identity of the contributing source."  *Id.*; *see also id.* ¶ 45 (describing information as reflecting such "a specific vantage point from which the sources are reporting" that, if disclosed, it "would identify the intelligence sources"); *id.* ¶ 46-47 (describing classified symbol numbers relating to sources that provided information on individuals and/or sources of national security interest).  Finally, Mr. Hardy has testified that "any greater specificity in the descriptions and justifications . . . could reasonably be expected to jeopardize the national security of the United States."  Hardy Decl. ¶ 49; *see also* Supp. Hardy Decl. ¶ 14 ("To further explain the material that is being protected by Exemption (b)(1) would reveal the very nature of the information the FBI is trying to protect.").

Courts that have addressed the withholding of identical information have upheld the FBI's use of Exemption 1 for that information.  *See*, *e.g.*, *Council on Am.-Islamic Relations v. FBI*, 749 F. Supp. 2d 1104, 1110-13 (S.D. Cal. 2010) ("*CAIR*") (intelligence sources); *Singh v. FBI*, 574 F. Supp. 2d 32, 42-43 (D.D.C. 2008) (numerical designator).  Plaintiffs do not meaningfully distinguish these cases.  *See* Opp. at 16 n.8.  Regarding *CAIR*, plaintiffs merely note that the court reviewed materials *in-camera*, but fail to explain why this Court should assume that same burden.  As for *Singh*, plaintiffs assert that the court was not bound by *Wiener*,

---

[4] Plaintiffs do not dispute the withholding of file numbers.  *See* Opp. at 16 n.9.

but as explained above *Wiener* is inapposite.  So plaintiffs are left with the assertion that, because the court in *Singh* merely said it concurred with the declaration the FBI issued, its analysis is "unpersuasive."  To the contrary, the declaration submitted in *Singh* – also by Mr. Hardy – was apparently so persuasive that the court did not need to dwell on the applicability of Exemption 1.

**B.      The FBI Properly Withheld Records Pursuant to FOIA Exemptions 6 and 7.**

It is undisputed that the FBI serves a "law enforcement function," as it "has a clear law enforcement mandate."  *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993) (internal quotation marks and citation omitted); *Rosenfeld v. U.S. Dep't of* Justice, 57 F.3d 803, 808 (9th Cir. 1995).  Moreover, and in this Circuit, "law enforcement agencies such as the FBI should be accorded special deference in an Exemption 7 determination."  *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1193 (1983).  Plaintiffs nonetheless challenge the FBI's Exemption 7 threshold showing of a nexus between the exempt documents and a law enforcement function. Specifically, plaintiffs assert that the exemption can only be claimed when a federal – and not a state or local – law is implicated, and challenge the specificity with which the FBI has described the exempt documents.  Neither of plaintiffs' positions has merit.

Plaintiffs cite *Church of Scientology v. United States Department of Defense*, 611 F.2d 738 (9th Cir. 1980), to argue that "the Ninth Circuit has made clear that the rational nexus that the agency must demonstrate is 'between enforcement of a *federal* law and the document for which an exemption is claimed."  Opp. at 17 (quoting *Church of Scientology*, 611 F.2d at 748 (emphasis added)); *see also id.* at 18 (describing purported Ninth Circuit "requirement of a federal law enforcement nexus").  But the language plaintiffs cite is "dicta," as the Ninth Circuit was not asked in *Church of Scientology* to address "Exemption 7's scope," including "whether Exemption 7 loses its statutory power when the records in question are related to a state prosecution."  *Wojtczak v. U.S. Dep't of Justice*, 548 F. Supp. 143, 146 (E.D. Pa. 1982); *see also Hopkinson v. Shillinger*, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) (noting that *Church of Scientology* referred to federal law enforcement purpose but did not "address[ ] federal law enforcement investigations into state crimes").[5]  Thus, the court in *Church of Scientology* spoke

---

[5] Plaintiffs cite *Hopkinson* to argue that it "expressly noted" the Ninth Circuit's position in *Church of Scientology* that there must be enforcement of a federal law.  *See* Opp. at 18 n.10.

"of Exemption 7 applying to violations of 'federal law' because such violations were the only violations at issue" in that case. *Id.* at 146. Indeed, the Ninth Circuit has subsequently described Exemption 7 merely as requiring a nexus "between [an agency's] law enforcement duties and the document for which Exemption 7 is claimed." *Binion*, 695 F.2d at 1194 (citing *Church of Scientology*, 611 F.3d at 748); *see also Wilkinson v. FBI*, 633 F. Supp. 336, 342 (C.D. Cal. 1986) (same).

Moreover, plaintiffs would have this Court ignore the FBI's well-established function of providing services and support to federal, state, municipal, and international agencies and partners. *See* Hardy Decl. ¶ 52. To that end, "[t]he FBI's general investigative authority in 28 U.S.C. § 533 and its general authority to collect records in 28 U.S.C. § 534 provides the statutory basis for the FBI's role in providing services and support to state and local law enforcement agencies in investigating crimes and terrorism related to the enforcement of federal laws." Supp. Hardy Decl. ¶ 15. Moreover, "[t]he FBI is also assigned the lead role in investigating terrorism and in the collection of terrorism threat information within the United States by 28 C.F.R. § 0.85." *Id.* Courts have relied upon these authorities in holding that Exemption 7 applies to information shared by the FBI with state and local law enforcement officials. *See Rojem v. U.S. Dep't of Justice*, 775 F. Supp. 6, 10 (D.D.C. 1991) (citing 28 U.S.C. § 534 and 28 C.F.R. § 0.85(g) to uphold application of Exemption 7 because "[f]ederal law specifically authorizes the FBI to assist local law enforcement agencies").

Plaintiffs' crabbed reading of Exemption 7 would ignore this critical role that the FBI plays. As the court in *Wotczak* put it,

> The FBI has long aided state and local law enforcement agencies in their attempts to reduce crime. This practice antedates the FOIA. Undoubtedly, much of the information provided to the FBI by state and local agencies contains sensitive information obtained from confidential sources which the agencies and parties to the investigations would not want disclosed to the general public or the subjects of the investigations. These files were considered confidential prior to the FOIA. Nothing in the language of the FOIA or its legislative history suggests that Congress sought to change this long-standing practice or to discourage cooperation between the FBI and other law enforcement agencies. If FOIA

---

What plaintiffs fail to mention is the court also expressly noted that *Church of Scientology* did not address "federal law enforcement investigations into state crimes." *Hopkinson*, 866 F.2d at 1222 n.27.

DEFENDANT'S REPLY IN SUP. OF MSJ AND OPP. TO PL. CROSS-MTN. FOR SUMMARY ADJUDICATION
Case No. 12-cv-3728-SI

Exemption 7 were to be read as applying only to federal law enforcement actions, the practical effect of such a ruling would be to discourage and perhaps curtail entirely the long-standing cooperation and information sharing of the nation's many law enforcement entities. Since such a negative result is not dictated by the plain meaning of the statute, this Court will not strain to interpret the FOIA in such a counter-productive manner.

*Wojtczak*, 548 F. Supp. at 148.  The Ninth Circuit has also highlighted the importance of confidential information-sharing between federal, state, and local law enforcement officials when it held that the confidential source exception embodied in Exemption 7(D) applies to state and local agencies.  According to the court, a contrary result would be "an impairment to federal law enforcement groups" because "state and local enforcement agencies are under no obligation to provide information to federal agencies." *Church of Scientology v. U.S. Dep't of Justice*, 612 F.2d 417, 426 (9th Cir. 1979).

Plaintiffs also criticize the FBI's declaration as not being sufficiently specific. *See* Opp. at 17-20.  In so doing, plaintiffs confuse authority regarding law enforcement agencies such as the FBI (to which deference is due on the threshold question of Exemption 7's applicability) with authority addressing agencies that do not have a law enforcement function.  For example, plaintiffs cite *Church of Scientology* to assert that "[s]pecificity is necessary to ensure that the records were compiled pursuant to a law enforcement objective 'within the authority of the' agency." *See* Opp. at 17 (quoting *Church of Scientology*, 611 F.2d at 748).  But the defendant in *Church of Scientology* was the Department of Defense, and the court in that case explicitly contrasted the Defense Department's mixed administrative and law enforcement functions with agencies "which have a clear law enforcement mandate, such as the FBI." *Church of Scientology*, 611 F.2d at 748.  Thus, while the FBI "need only establish a 'rational nexus,'" agencies with mixed functions (such as the Defense Department) "must demonstrate that [they have] a purpose falling within its sphere of enforcement authority." *Id.*  And in any event, the declaration that the FBI submitted here *is* very specific, describing the types of documents involved, information being withheld, the basis for the withholding, and the law enforcement purpose at issue. *See* Hardy Decl. ¶¶ 53-77, 79-83.  That takes this case outside of the ambit of the other cases that plaintiffs cite, such as *Wiener*, 943 F.2d at 986

(in which the defendant merely cited two "very broad criminal statutes, prohibiting a wide variety of conduct"), and *Campbell*, 164 F.3d at 32 (in which the defendant offered a blanket justification for application of the exemption for "at least three files collected over many years on different topics").  *See* Opp. at 19.

Finally, plaintiffs speculate that the FBI is "overreaching and engaged in the illegitimate purpose of 'generalized monitoring and information-gathering' about First Amendment activity."  Opp. at 19.  In support, plaintiffs cite a document produced by the FBI pursuant to another FOIA request that they say "confirms that the FBI did not believe Occupy to be engaged in criminal activity."  Opp. at 20 (citing Declaration of Linda Lye in Support of Plaintiffs' Cross-Motion for Summary Adjudication and in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 24, 01/18/2013) ("Lye Decl."), Ex. O, at PCJF FOIA 0090) (describing the document as saying "the movement known as occupy Wall street . . . has been known to be peaceful").  The only way plaintiffs can characterize the document this way is to ignore the second half of the sentence that they cite:

> This movement [known as Occupy Wall Street] has been known to be peaceful *but demonstrations across the United States show that other groups have joined in such as Day of Rage and the October2011 Movement.*

Lye Decl., Ex. O, at PCJF FOIA 0090 (emphasis added).  Moreover, plaintiffs need look no further than the documents the FBI produced to them to know that the FBI was justified in coordinating the information that it did; those documents reflect concerns about, among other things, the shut-down of west coast ports (resulting in transit delays, blocked roads, commercial disruptions, possible violence, and large effects on the supply chain network) and rioting (including harm to people "in the wrong place at the wrong time").  Hardy Decl. Ex. G.  Whatever else one may think about the Occupy movement, the materials that the FBI has produced undercut, rather than support, plaintiffs assertion that the FBI's declaration reflects "a mere pretext for unlawful surveillance of First Amendment activities."  Opp. at 20.

In short, the FBI clearly has established a rational nexus between its law enforcement function and the documents at issue.  Exemption 7 therefore applies.

### 1.   Exemption 7(A) (Pending Law Enforcement Proceedings)

In their Opposition, plaintiffs question whether Exemption 7(A) is being applied only to control file numbers, or to entire pages withheld in full.  *See* Opp. at 20.  As set forth in the Supplemental Hardy Declaration, the FBI has clarified "that it is asserting Exemption (b)(7)(A) for the withholding of both control file numbers of pending FBI investigations and for the withholding of particular pages in full."  Supp. Hardy Decl. ¶ 16.  While paragraph 54 of the initial Hardy declaration referred to control file numbers, subsequent paragraphs in the declaration referred to withholding pages in full which pertain to ongoing criminal and national security investigations.  Supp. Hardy Decl. ¶ 16 (citing Hardy Decl. ¶¶ 74-76, 79, 81-82).  As set forth in both in both the initial and supplemental declarations, release of this information could reasonably be expected to interfere with ongoing enforcement proceedings.  Supp. Hardy Decl. ¶ 16; Hardy Decl. ¶¶ 74-76, 79, 81-82.  Moreover, "it is not possible to segregate portions of these pages to withhold only control file numbers because the remaining information on the page is also exempt" pursuant to Exemption 7(A).  Supp. Hardy Decl. ¶ 16.

### 2.   Exemptions 6 and 7(C) (Clearly Unwarranted and Unwarranted Invasion of Personal Privacy).

Plaintiffs assert that the FBI is improperly withholding information relating to third parties who provided information to the FBI, third parties merely mentioned, and state or local law enforcement personnel.  The FBI's use of each of these exemptions is both valid and justified.

First, plaintiffs challenge the applicability of Exemptions 6 and 7(C) to parties who provided information to the FBI.  According to plaintiffs, because "Congress has created a specific statutory exemption for confidential law enforcement purposes" in Exemption 7(D), the FBI should not be permitted to use Exemptions 6 and 7(C) for this information.  Opp. at 21.  Plaintiffs, however, cite no authority for this proposition.  And for good reason – courts routinely uphold the application of Exemption 7(C) to informant-related information.  *See Schiffer v. FBI*,

78 F.3d 1405, 1410 (9th Cir. 1996) (protecting pursuant to Exemption 7(C) names of persons who provided information to FBI); *KTVY-TV v. United States*, 919 F.2d 1465, 1469 (10th Cir. 1990) (per curiam) (withholding interviewees' names as "necessary to avoid harassment and embarrassment"); *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir. 1995) (holding that interviewees and witnesses involved in criminal investigation have substantial privacy interest in nondisclosure of their names pursuant to Exemption 7(C)); *cf. Computer Prof'ls for Soc. Responsibility v. U.S. Secret Service*, 72 F.3d 897, 904 (D.C. Cir. 1996) (finding that release of names of individuals, including nonsuspects, who attended public meeting that attracted attention of law enforcement officials would impinge upon their privacy). In fact, the Ninth Circuit has explicitly noted that courts need not "reach the issue whether the witnesses who provided information to the FBI are 'confidential informants'" under Exemption 7(D) if Exemption 7(C) applies. *See Schiffer*, 78 F.3d at 1408.

Plaintiffs fare no better with their arguments regarding third parties merely mentioned. Plaintiffs fail to confront the legions of cases holding that Exemption 7(C) can be used to withhold references to individuals who are merely mentioned in law enforcement records. *See, e.g.*, *Gabel v. IRS*, 134 F.3d 377, 377 (9th Cir. 1998) (protecting third-party names in Department of Motor Vehicles computer printout included in plaintiff's IRS file); *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000) (withholding names of third parties mentioned or interviewed in course of investigation). These privacy interests are "well-recognized and substantial," as being connected "with particular investigations" may lead to "future harassment, annoyance, or embarrassment." *Neeley*, 208 F.3d at 464-65; *see also Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987) ("It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."). Plaintiffs manage to turn this well-settled proposition on its head by presuming that individuals who are named in FBI reports would want that fact disclosed so that they could turn around and sue the government under some unnamed theory of liability. Opp. at 21-22.[6]

---

[6] In this regard, plaintiffs' citation to *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1205 (9th Cir. 2007), and *ACLU v. National Security Agency*, 493 F.3d 644, 655 (6th Cir. 2007), is completely inapposite. Neither case involved FOIA; both merely stand for the proposition that a plaintiff must demonstrate injury-in-fact in order to have standing.

These individuals could also find themselves the recipients of subpoenas; lead counsel for plaintiffs has indicated that she represents parties in two cases challenging excessive police force against Occupy protesters.  *See* Lye Decl. ¶ 3.  Whatever the merits of those lawsuits, protecting the privacy of individuals identified in government documents from litigants reflects a justifiable use of Exemption 7(C).  *See, e.g. Lahr v. NTSB*, 569 F.3d 964, 976-77 (9th Cir. 2009) (reversing district court and holding that eyewitnesses in investigation have cognizable privacy interest in nondisclosure of their names to avoid unwanted contact by plaintiff and other entities); *Cleary v. FBI*, 811 F.2d 421, 424 (8th Cir. 1987) (deciding disclosure would subject "sources to unnecessary questioning concerning the investigation [and] subpoenas issued by private litigants in civil suits incidentally related to the investigation").

As for state or local law enforcement personnel, plaintiffs assert that the Ninth Circuit has "rejected the applicability" of Exemption 7(C) "to information about local law enforcement officers."  Opp. at 22.  But the only case that plaintiffs cite for this proposition, *Lissner v. United States Customs Service*, 241 F.3d 1220, 1223-24 (9th Cir. 2001), says nothing of the kind.  To the contrary, the decision explicitly notes that such officials retain privacy interests, but noted that information regarding two police officers who were arrested for smuggling steroids "did not reveal intimate, private details" – such as a general physical description of the officers – "that warrant protection from disclosure."  *Id.*  In fact, courts routinely uphold the withholding of such the identities of local law enforcement officials – especially where, as here, there are no allegations of wrongdoing (such as smuggling drugs) on the part of those officers.  The reasons for withholding such information is straightforward:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties.  Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978); *see also Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999) (protecting identities of nonfederal law enforcement officers); *Jones v. FBI*, 41 F.3d 238, 246 (6th Cir. 1994) (protecting names of federal, state, and local law enforcement personnel).

Because the government has identified non-trivial, non-speculative privacy interests regarding all three categories of information, the exemptions shield the information unless "the public interests in disclosing the *particular* information requested outweighs those privacy interests." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012).  Plaintiffs fail to offer any meaningful public interest in disclosure.  Instead, they assert that disclosure of this information would fulfill "FOIA's purpose to disclose publicly records that document whether the FBI abused its law enforcement mandate by overzealously investigating a political protest movement. . . ."  Opp. at 21 (quoting *Rosenfeld*, 57 F.3d at 811-12).  As a threshold matter, plaintiffs' insinuations that the FBI has "abused" its mandate or has "overzealously" conducted investigations is unfounded, *see* Part II.B, *supra*, and their assertion that disclosure of information will fulfill FOIA's purpose reflects "[m]ere speculation about hypothetical public benefits [that] cannot outweigh a demonstrably significant invasion of privacy."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177-78 (1991) (Exemption 6); *see also NARA v. Favish*, 541 U.S. 157, 173-75 (2004) (holding that requester who asserts a government misconduct "public interest" must produce evidence that would be deemed believable by a "reasonable person" for there to exist a "counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records"); *Schiffer*, 78 F.3d at 1410 (finding "little to no" public interest in disclosure of names when requester made unsubstantiated claim that FBI's decision to investigate him had been affected by "undue influence"); *Quinon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996) (absent evidence FBI engaged in wrongdoing, public interest is "insubstantial").

Moreover, plaintiffs' reliance on *Rosenfeld* for their public interest justification is misplaced.  *See* Opp. at 21.  That 1992 decision involved a FOIA request relating to 1960s protests and the Free Speech Movement ("FSM") at the University of California, Berkeley.  *Rosenfeld*, 57 F.3d at 806.  Thus, the documents at issue were many years, if not decades, old.  The age of the documents – and the privacy interests of the parties identified therein – played a critical role in the court's reasoning.  *See id.* at 812-13.  Here, by contrast, the relevant records are of a very recent vintage.  Moreover, the passage plaintiffs cite related to the withholding of

information relating to the subjects of an FBI investigation; to that end, the court noted that "disclosing the names of investigation subjects would make it possible to compare the FBI's investigation to a roster of the FSM's leadership." *Id.* at 812. Revealing the names of persons who provided information to the FBI, who were merely mentioned in FBI reports, or local law enforcement officials, would have no similar benefit in this case.

The only other justification that plaintiffs offer for releasing private information is that media coverage of the Occupy movement "was extensive" and included the names of some people who were injured. Opp. at 22. But plaintiffs speculate that the names being withheld are the same as the names of individuals who have already appeared in the media. Moreover, the case that plaintiffs cite, *Gordon v. FBI*, involved the withholding of names pursuant to Exemption 7(C) where the FBI had disclosed those names "elsewhere in its production." 390 F. Supp. 2d 897, 901 (N.D. Cal. 2004). That has not occurred here. And in any event, the Ninth Circuit has held that individuals do "not lose their statutory interest in privacy" pursuant to Exemption 7(C) "by reason of . . . earlier publicity." *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1047 (9th Cir. 1999). Even assuming that the names of individuals the FBI is withholding were previously reported in the media as having been injured in an Occupy Oakland protest, that does not necessarily mean that those individuals would want their names disclosed again in the context of an FBI investigation.

Finally, plaintiffs assert that the FBI merely asserts, but does not explain why, the documents in this case are not reasonably segregable. *See* Opp. at 22. However, "agencies are entitled to a presumption that they complied with their obligation to disclose 'any reasonably segregable portion of a record.'" *Boyd v. U.S. Dep't of Justice*, 475 F.3d 381, 382 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552(b)). Here, the FBI has represented that "[a]ll documents were processed to achieve maximum disclosure consistent with the access provisions of the FOIA," that "[e]very effort was made to provide plaintiffs . . . with all reasonably segregable portions of releasable material," and that "[n]o reasonably segregable, nonexempt portions were withheld from plaintiffs." Hardy Decl. ¶ 23. The declaration also states that the withheld material is either exempt from disclosure or "is otherwise so intertwined with protected material that

segregation is not possible without revealing the very underlying material the FBI is trying to protect." Hardy Decl. ¶ 24.  Most tellingly, the actual documents provided to plaintiffs support Mr. Hardy's assertions, as they indicate that the FBI did carefully redact exempt materials and produced any non-exempt responsive materials to plaintiffs.  *See* Hatch Decl. Ex. G (Bates Nos. ACLU-NC-15 to ACLU-NC-16, ACLU-NC-36 to ACLU-NC-37).

### 3.  Exemption 7(D) (Information from Confidential Sources)

The FBI properly applied Exemption 7(D) to withhold information provided to the FBI by confidential sources.  Plaintiffs assert that the FBI offers no facts to support its assertion that certain sources were provided "an express assurance of confidentiality."  Opp. at 23.  As set forth in the Supplemental Hardy Declaration, however, the express assurances of confidentiality are evident from the face of the documents, as described in his previous declaration.  *See* Supp. Hardy Decl. ¶ 17 (documents "reflect that they contain information from a confidential human source"); Hardy Decl. ¶¶ 77-80.  As for the FBI's withholding of information under an implied assurance of confidentiality, the agency must "describe[ ] circumstances that can provide a basis for inferring confidentiality."  *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1063 (3d Cir. 1995). "[G]iven the seriousness of the potential crime and the position of the sources," it is appropriate here to infer an implied assurance of confidentiality.  Supp. Hardy Decl. ¶ 17; *see also* Hardy Decl. ¶ 67 (describing "[t]he sensitivity of the information, and the position of the sources, are such that it may be inferred that the information was provided with the expectation of confidentiality"); *id.* ("These sources provided valuable information that is detailed and singular in nature.").  Finally, Mr. Hardy has testified that "[t]he FBI has released as much segregable information as possible without disclosing the sources' identities." *Id.*

### 4.  Exemption 7(E) (Investigative Techniques and Procedures)

The FBI has invoked Exemption 7(E) to protect procedures and techniques used by FBI agents to conduct national security investigations and methods and techniques involving the identity of specific FBI units.  Plaintiffs once again criticize this declaration as "boilerplate," even though the Hardy declaration provides a great amount of detail regarding the harm that could occur if the technique is disclosed:

Exemption (b)(7)(E) has been asserted to protect procedures and techniques used by FBI agents to conduct national security investigations. Disclosure of this information could enable subjects to circumvent similar currently used techniques and procedures by law enforcement. The relative benefit of these techniques and procedures could be diminished if the actual techniques and procedures were revealed in this matter. This in turn could facilitate the accumulation of information by other investigative subjects regarding the circumstances under which these techniques and procedures were used or requested and the value of the information obtained. Release of this type of information could enable criminals to educate themselves about the law enforcement investigative techniques and procedures employed for the location and apprehension of individuals and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and procedures and to continue to violate the law. . . .

Hardy Decl. ¶ 71. The FBI's declaration is no less specific regarding the application of Exemption 7(E) to the identity of FBI units. *See id.* ¶ 72.

Plaintiffs also criticize the declaration as not explaining whether the techniques are not "routine and generally known." Opp. at 24. As set forth in the Supplemental Hardy Declaration, "[w]hile the techniques may be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques, to include the specifics of how and in what setting they are employed, is not generally known to the public." Supp. Hardy Decl. ¶ 18. Accordingly, "[r]evealing the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material would effectively reveal specifics of how, and in what settings, the techniques are employed." *Id.* This would "severely hamper the FBI's law enforcement efforts." *Id.*

Finally, plaintiffs quarrel with the FBI's withholding of the identity of FBI units. Opp. at 24. However, "[r]evealing which FBI units perform which functions and investigative duties may alert individuals to the type and level of focus of particular activities." Supp. Hardy Decl. ¶ 19. Moreover, and for certain units, "the name also reveals the specific investigative technique in which the unit specializes." *Id.* This information, if divulged, "could reasonably be expected to reveal the FBI's strategies and approaches to threats to national security." *Id.* Accordingly, the FBI's use of Exemption 7(E) is warranted here.

**III.     The Coast Guard Is Not Required to Produce Non-Responsive Materials.**

When processing plaintiffs' FOIA request, the FBI identified two documents, totaling thirteen pages,[7] which originated with the United States Coast Guard.  Hardy Decl. ¶ 84. Plaintiffs do not challenge the exemptions that the Coast Guard has claimed over portions of these documents.  *See* Opp. at 25.  Instead, plaintiffs challenge a set of redactions made for information that was not responsive to plaintiffs' FOIA request.  *See id.*

According to plaintiffs, "[t]here is no authority to delete portions [of documents] unless they are exempt, and 'non-responsive' is not among FOIA's enumerated exemptions."  Opp. at 25.  But that analysis is backwards:  The starting point is whether information is responsive to a FOIA request in the first instance, and not whether an exemption is applicable.  And regarding that first, threshold determination, the law is settled that agencies simply have "no obligation to produce information that is not responsive to a FOIA request."  *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010).  For that reason, this and other courts have held that an agency responding to a FOIA request may redact non-responsive information.  *See California ex rel. Brown v. NHTSA*, No. 06-2654 SC, 2007 WL 1342514, at *1, *2 (N.D. Cal. May 8, 2007) ("Defendants' redaction of non-responsive information was proper"); *Wilson*, 730 F. Supp. 2d at 156 ("there is no reason for this Court to find these redactions [for out-of-scope information] improper").[8]

Plaintiffs' argument that they are somehow entitled to non-responsive information in the documents the Coast Guard has already produced is especially striking in light of the descriptions of the redacted materials that the Coast Guard has already provided.   As explained

---

[7] Plaintiffs have questioned the number of pages of Coast Guard documents that the FBI identified in response to plaintiffs' FOIA request.  *See* Opp. at 6 n.4  As set forth in the Supplemental Hardy Declaration, any confusion resulted from the FBI's provision of Bates-stamps to non-responsive pages.  *See* Supp. Hardy Decl. ¶ 11.

[8] The current version of the Department of Justice's Guide to the Freedom of Information Act similarly acknowledges that courts have held that agencies responding to FOIA requests need not process and disclose non-responsive portions of otherwise responsive records.  *See* United States Department of Justice Guide to the Freedom of Information Act at 80 (2009 ed.), *available at* http://www.justice.gov/oip/foia_guide09/procedural-requirements.pdf (last visited Feb. 15, 2013).  Plaintiffs' citation to a non-binding eighteen-year-old guidance document is, at best, inapposite.  *See* Opp. at 25 n.13.

DEFENDANT'S REPLY IN SUP. OF MSJ AND OPP. TO PL. CROSS-MTN. FOR SUMMARY ADJUDICATION
Case No. 12-cv-3728-SI

in the Coast Guard declaration submitted in connection with the FBI's Motion for Summary Judgment, the redactions in the first document (ACLU-NC-7 to ACLU-NC-8) concern "topics unrelated to Occupy Oakland or any other Occupy movement," such as "captured drugs, merchant ship crew issues and merchant ship security breaches."  Declaration of Peter J. Hatch (Dkt. No. 22-2, 12/21/2012), ¶¶ 7, 8.  In the other document (ACLU-NC-10 to ACLU-NC-13), the redacted, non-responsive information "consists of address lists and product handling instructions within the message system" that "do not include any substantive intelligence information on Occupy Oakland or any other Occupy movement."  *Id.* ¶¶ 7, 9.  Moreover, the redacted handling instructions within that second document are classified as "Confidential."  *Id.* ¶ 9.  Requiring the Coast Guard to re-process this redaction will not lead to the disclosure of substantive information, but instead may lead to litigation over any exemptions that the Coast Guard may claim.  Any such litigation would be especially wasteful in light of the fact that the information the Coast Guard has withheld is unrelated to the substance of plaintiffs' FOIA request in the first instance.

**CONCLUSION**

For the foregoing reasons, this Court should deny plaintiffs' cross-motion for summary adjudication and grant defendant's motion for summary judgment.


DATED:  February 15, 2013          Respectfully submitted,

                                 STUART F. DELERY
                                 Principal Deputy Assistant Attorney General

                                 ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                 Deputy Branch Director


                                 */s/ Brad P. Rosenberg*
                                 BRAD P. ROSENBERG (D.C. Bar No. 467513)
                                 Trial Attorney
                                 U.S. Department of Justice,
                                 Civil Division, Federal Programs Branch
                                 P.O. Box 883
                                 Washington, D.C.  20044
                                 Telephone:  (202) 514-3374
                                 Facsimile:  (202) 616-8460
                                 E-mail:  brad.rosenberg@usdoj.gov

                                 *Attorneys for the Defendant*
                                 *Federal Bureau of Investigation*