IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION & SAN FRANCISCO BAY GUARDIAN,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | No. C 12-03728 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Presently pending before the Court are the parties' cross motions for summary judgment. After careful consideration of the arguments of counsel and the papers submitted, the Court DENIES defendant's motion for summary judgment, and GRANTS IN PART and DENIES IN PART plaintiffs' motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

This action arises under the Freedom of Information Act, 5 U.S.C. § 552. On March 8, 2012, plaintiffs American Civil Liberties Union and the *San Francisco Bay Guardian* submitted a FOIA request to the Federal Bureau of Investigations for records pertaining to the "Occupy" movement. Decl. of David M. Hardy ("Hardy Decl.") ¶ 7, Ex. A. Specifically, plaintiffs requested the following materials:

> 1) Records created, received, gathered or maintained by the FBI (including but not limited to sub-entities within the FBI such as the Joint Terrorism Task Force, the Campus Liaison Initiative, and the Academic Alliance Program) since June 1, 2011 pertaining to persons, planning, assemblies, marches, demonstrations, or any other activity associated with movements referring to themselves as Occupy Oakland, Occupy San Francisco, Occupy Cal, or Occupy UC Davis.

2) Intelligence Bulletins referring to the "Occupy" movement generally or any geographically specific Occupy movement.

3) Training for FBI agents regarding the Occupy movement generally or any geographically specific Occupy movement.

4) Written materials related or referring to the Occupy movement generally or any geographically specific Occupy movement and setting forth or referring to legal reasoning or authority relied upon by the FBI with respect to its investigatory and enforcement activities.

*Id.* On March 26, 2012, the FBI informed plaintiffs that their request had been approved for expedited processing and a search for responsive records had begun. *Id.* ¶ 9, Ex. C. On May 17, 2012, plaintiffs asked the FBI when they could expect to receive the responsive records, and, having received no response, plaintiffs filed an action in this Court two months later. *Id.* ¶¶ 10-11, Ex. D. On August 24, 2012, the FBI released 13 pages to plaintiffs, out of 37 responsive pages, explaining that it had withheld 24 pages in full pursuant to FOIA exemptions. Documents produced included 6 out of 13 responsive pages from the Coast Guard. *Id.* ¶ 12, Ex. E. After receiving a clarification of plaintiffs' request in October, the FBI found three more responsive pages, and withheld all three pages pursuant to FOIA exemptions. *Id.* ¶ 13, Ex. F.

Plaintiffs argue that the FBI's search for responsive documents was inadequate, and that the FBI is improperly withholding information pursuant to FOIA exemptions.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 114 (9th Cir. 1988). The government agency bears the ultimate burden of proving that a particular document falls within one of the nine statutory exceptions to the disclosure requirement. *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994). The government may submit affidavits to satisfy their burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980)). The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id.* (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).

**DISCUSSION**

**I.      Adequacy of Search**

In responding to a FOIA request, an agency must "demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citing *Zemansky*, 767 F.2d at 571). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Zemansky*, 767 F.2d at 571 (emphasis in original). In

3

order to demonstrate the adequacy of a search, "the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (quoting *Weisberg*, 745 F.2d at 1485)).

Plaintiffs challenge the adequacy of the IRS search based on two grounds: the FBI declarations are too conclusory to demonstrate the search was adequate, and the record contains indications that the FBI overlooked materials.

### A. Conclusory Declarations

Initially, the FBI submitted a single declaration to support its motion for summary judgement, the declaration of David Hardy, who is the Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI. Hardy Decl. ¶ 1. In response to some of the arguments in plaintiffs' brief, the FBI submitted a supplemental declaration of David Hardy ("Suppl. Hardy Decl.").

The FBI explains that in response to plaintiffs' FOIA request, it conducted a search of its Central Records System ("CRS") for responsive records. Hardy Decl. ¶¶ 14, 20. The CRS is an index of files organized by subject matter; access is obtained through the General Indices. *Id.* ¶¶ 14-15. The FBI searched the CRS indices using 43 separate terms related to the Occupy movement, but did not find any responsive records. *Id.* ¶ 20. Then the FBI conducted text search of its Electronic Case File ("ECF"), which is an electronic repository for official text-based documents. *Id.* ¶¶ 18, 21. Through this method, the FBI found the responsive documents that were partially released to plaintiffs. *Id.* ¶ 21.

Plaintiffs argue that the FBI fails to adequately explain what other databases the FBI uses to maintain and index its records, and why searches were not conducted of those databases. In another case in this district, wherein the FBI conceded that Hardy submitted a substantially similar declaration, the court found that the failure of the FBI to "address whether other databases are indexed by name" meant that the court could not "assess whether the search terms are 'reasonably calculated to uncover all relevant documents requested.'" *Rosenfeld v. U.S. Dep't of Justice*, C 07-03240 MHP, 2008 WL 3925633, *14 (N.D. Cal. Aug. 22, 2008) ("*Rosenfeld 2008 Order*"). The FBI in *Rosenfeld* then submitted a declaration explaining that it had not searched other databases, including "Criminal Law Enforcement Application," "Integrated Intelligence Information Application," and "Criminal

Intelligence Support Program." *Rosenfeld v. U.S. Dep't of Justice*, C 07-3240 MHP, 2010 WL 3448517, *6 (N.D. Cal. Sept. 1, 2010) ("*Rosenfeld 2010 Order*").

The FBI explains in its supplemental declaration that the FBI maintains "numerous" automated records systems, and "many" are indexed to the CRS. Suppl. Hardy Decl. ¶ 5. However, it does not explain which record systems are not indexed to the CRS, and only make conclusory assertions that the CRS is the system "most likely to contain records responsive to plaintiffs' requests" and that it is "reasonable to assume" that a search of the CRS is sufficient. *Id.* ¶¶ 5-6. The FBI asserts that this is sufficient, and attempts to distinguish *Rosenfeld 2008 Order*, citing to *Mobley v. C.I.A.*, CIV.A. 11-2072 BAH, 2013 WL 452932, at *13 (D.D.C. Feb. 7, 2013). In *Mobley*, the District of Columbia court found that the FBI's failure to search shared drives and email systems did not render the search of the CRS and ELSUR files inadequate. *Id.* However, the court in *Mobley* relied on the FBI's supplemental declaration that explained why it did not search those drives, and unlike in this case, it relied on the fact that there was no indication that a search of the email and shared drives would reveal any responsive information. *Id.*

"There is no requirement that an agency search every record system" in an attempt to locate responsive records, especially if the search will be in vain." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.1990); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). However, "[w]here the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir.1982).

As the *Rosenfeld* court explained, "[w]hile the FBI's decision to stop its search for responsive files prior to the search of every database in its possession does not render their search unreasonable, the FBI must provide some basis for the court to evaluate whether its decision to not search additional databases was reasonable." *Rosenfeld 2010 Order*, 2010 WL 3448517, *7. This is particularly relevant in the instant case, because the FBI has indicated that the documents withheld "originated in FBI files which pertain to ongoing criminal national security investigations." Hardy Decl. ¶ 75. It is the government's burden to demonstrate the adequacy of the search, and the Court finds that it has not done so in this case.

5

**B.     Indications of Overlooked Materials**

A search is inadequate where "the record itself reveals 'positive indications of overlooked materials.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (quoting *Founding Church of Scientology of Washington, D.C. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C.Cir. 1979)). A "court evaluates the reasonableness of an agency's search based on what the agency knew at [the search's] conclusion rather than what the agency speculated at its inception." *Campbell*, 164 F.3d at 28 (finding the FBI's search of the CRS inadequate "once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search"). Plaintiffs cite to multiple indications that the FBI has overlooked responsive material in their search. The FBI sufficiently addresses some but not all of these concerns.

First, plaintiffs point to a declassified intelligence bulletin that includes a depiction of a poster for the first Occupy Wall Street protest. *See* Lye Decl., Ex. E. Plaintiffs argue that this bulletin is responsive to their request, but the fact that it was not found by the FBI in their search indicates that the search was inadequate. The FBI explains that this bulletin was not found in their search because the words "Occupy Wall Street" are part of the image of the poster, and therefore would not be captured in a text search. Suppl. Hardy Decl. ¶ 7. The FBI also reiterated that "[t]he decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent," and therefore if the FBI agent had not indexed the file as "Occupy," then it would not have been found in the CRS search. *Id.* Therefore, the Court does not find that the FBI's failure to locate this document is an indication that the search was inadequate.

Second, plaintiffs argue that there are indications that the FBI should have found more intelligence products regarding Occupy. The FBI only found one document responsive to plaintiffs' second category of requests for intelligence bulletins; this withheld document is described as pertaining to potential sovereign activity in Arkansas. Hardy Decl. Ex H ("Vaughn Index"). However, the FBI freely admits that it was sharing intelligence information about the Occupy movement with local law enforcement agencies. *See* Hardy Decl. ¶ 75; Suppl. Hardy Decl. ¶ 12; *see also* Lye Decl., Ex. O. In one of the documents produced to plaintiffs, the FBI states that it contacted the Stockton Police Department to "share intelligence about 'Occupy' protestors targeting the Port of Oakland." Hardy

6

Decl. Ex. G. This indicates that the FBI had intelligence to share. But no intelligence about the Occupy protestors in Oakland was found by the search. The Court finds that the FBI has failed to adequately explain why the search failed to uncover this information.

Third, plaintiffs argue that when the FBI shares intelligence or opens an investigation, it is required to document this appropriately, but the FBI's search found none of the expected documentation. The FBI Domestic Investigations and Operations Guide ("DIOG") requires that when the FBI shares intelligence with a state or local agency, it must document it on a form FD-999. DIOG § 12.6. When the FBI opens an Assessment (similar to an initial investigation, but requiring even less factual predication), it must document that on an FD-71, a Guardian FD-71a, or an EC. *See* DIOG §§ 5, 5.5, 5.6.2. If the FBI opens a Preliminary or Full Investigation, it must document this on an EC. DIOG §§ 6.7.1, 7.7.1. Plaintiffs argue that there is sufficient indications from the responsive documents that there has been a sharing of information, and investigations that rise at least to the level of Assessment. *See, e.g.*, Hardy Decl. Ex. G (discussing sharing of information with Stockton police); Hardy Decl. ¶ 54 (acknowledging that responsive documents were found in "pending FBI investigations"). Plaintiffs argue that these forms required under the DIOG would be responsive to the fourth category in plaintiffs' FOIA request, and the fact that they were not found indicates that the search was inadequate.

The FBI argues that the "pending FBI investigations" relate to different subject matter, and the searches it conducted found no main FBI files on Occupy. Therefore, it argues that should not be surprising that no DIOG forms for an investigation were found. Furthermore, the FBI clarified in its supplemental brief that one of the withheld documents was a form FD-71. Suppl. Hardy Decl. ¶ 8. However, the Court finds that the FBI has still not adequately addressed the issue of why a form FD-999 was not found in the search, as would be expected when the documents found show that the FBI was sharing information with the Stockton Police Department.

Accordingly, the Court ORDERS the FBI to provide a further supplemental declaration addressing the concerns the Court has found regarding the adequacy of the search. That supplemental declaration shall be provided to the Court within thirty (30) days of the date of this Order.

## II. Applicable Exemptions

### A. Exemption 1, National Security

Exemption 1 under FOIA permits the government to withhold documents and portions of documents which have been properly classified pursuant to an Executive Order for the purposes of national security. 5 U.S.C. § 552(b)(1). "Though an executive agency's classification decisions are accorded substantial weight, the FOIA permits challenges to Exemption 1 withholdings, requires the district court to review the propriety of the classification, and places the burden on the withholding agency to sustain its Exemption 1 claims." *Wiener v. F.B.I.*, 943 F.2d 972, 980 (9th Cir. 1991).

The FBI classified withheld pages as "Secret," and asserted that the unauthorized disclosure of this information "reasonably could be expected to cause serious damage to national security." Hardy Decl. ¶¶ 31, 36. The FBI withheld in full pursuant to Exemption 1 a single two-page document described as a "[r]eport documenting contact with confidential human source." Vaughn Index. Plaintiffs argue that the FBI's general assertions lack specificity and fail to explain the particular harm that would come from the disclosure of this document.

The Ninth Circuit has held that if the Government "does not describe any particular withheld document . . . or describe the injury to national security that would follow from the disclosure of the confidential source of the particular document," and instead "simply relies on general assertions that disclosure of certain categories of facts may result in disclosure of the source and disclosure of the source may lead to a variety of consequences detrimental to national security," then it is inadequate. *Wiener*, 943 F.2d at 981; *accord Campbell*, 164 F.3d at 30-31 (holding that affidavits are insufficient "if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping," and finding the Government's declaration inadequate because it did not contain any "language suggesting that the FBI tailored its response a specific set of documents"); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir.1987) (rejecting as inadequate a "categorical description of redacted material coupled with [a] categorical indication of anticipated consequences of disclosure").

In the instant case, the FBI states that it "protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause

serious damage to the national security: (A) file numbers;[1] (B) detailed intelligence activity information compiled regarding a specific individual or organization of national security interest; and (c) intelligence sources." Hardy Decl. ¶ 36. It then lists the generalized security risks that may stem from the release of these three categories of information. *See id.* ¶¶ 38-46. The FBI attempts to distinguish its declaration from the inadequate declarations in *Weiner*, *Campbell*, and *King* by pointing to passages that do relate to the specific document withheld. *See* Def.'s Reply 8-9.

The Court finds that the FBI's declaration, while slightly more complete than those in in *Weiner*, *Campbell*, and *King*, is nevertheless inadequate to sustain its burden in showing the applicability of Exemption 1. For example, the FBI claims that the document contains "detailed intelligence activities information" that if revealed would disclose the method and capabilities of intelligence activity utilized and "provide an assessment of the intelligence source penetration of a specific target at a specific time." Hardy Decl. ¶ 39. But the FBI fails to explain how revealing its intelligence source method would harm national security. *See Weiner* 943 F.2d at 981. Similarly, the FBI states that its "classified intelligence source" is specific, and if the document is disclosed, it "reasonably could be expected to reveal the identity of the contributing source." Hardy Decl. ¶ 41. The national security harms that the FBI asserts may stem from revealing the source are merely general harms, such as causing other sources to fear that their identities will be revealed. *Id.* ¶¶ 42-43. However, the FBI fails to assert how the revelation of this particular source will specifically harm national security. This failure is particularly striking because the FBI claims exemptions for investigative techniques or confidential sources in almost every withheld document, but it asserts a national security exemption only for this document.

Therefore, the Court finds that the Government's declaration regarding Exemption 1 is inadequate.

### B. Exemption 7, Law Enforcement Objective

Exemption 7 under FOIA permits the government to withhold "records or information compiled for law enforcement purposes" under certain enumerated conditions. 5 U.S.C. § 552(b)(7). The FBI

---

[1] Plaintiffs do not dispute the withholding of file numbers.

9

has withheld multiple documents under several categories of this exemption: Exemption 7(A) for interference with enforcement proceedings, Exemption 7(c) for unwarranted invasion of personal privacy, Exemption 7(D) for disclosure of a confidential source, and Exemption 7(E) for disclosure of investigative techniques. *Id.*; Vaughn Index. Plaintiffs argue that the FBI fails to adequately assert the "law enforcement purposes" prerequisite for Exemption 7.

"An agency which has a clear law enforcement mandate, such as the FBI, need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed." *Church of Scientology of California*, 611 F.2d at 748. "The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). However, "generalized monitoring and information-gathering" do not suffice for Exemption 7. *Id.* at 809 (quoting *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 775 (S.D.N.Y. 1979)).

In the instant case, the FBI asserts that its law enforcement objective is "provid[ing] support to state and local law enforcement agencies regarding the 'Occupy' movements across the country." Hardy Decl. ¶ 52. The FBI clarified that its law enforcement basis is also under "[t]he FBI's general investigative authority in 28 U.S.C. § 533 and its general authority to collect records in 28 U.S.C. § 534," and it was investigating "crimes and terrorism related to the enforcement of federal laws." Suppl. Hardy Decl. ¶ 15.

The Court finds that the FBI's declaration is insufficient to establish a nexus. The FBI refers only vaguely to "crimes" and "federal laws," but does not cite the specific laws that it was enforcing. The Ninth Circuit is clear that generalized investigatory power is not enough, and the government must cite the specific law it is enforcing and the specific criminal activity suspected. *See Wiener*, 943 F.2d at 985 (finding that the FBI had failed to establish a rational nexus between enforcement of a federal law and the document when it explained it was investigating violations of the Civil Obedience Act and the Anti-Riot Act because these "are very broad criminal statutes" and merely citing the laws does "little to inform Wiener of the claimed law enforcement purpose underlying the investigation of John Lennon"). The FBI in the instant case has not even done this much.

Therefore, the Court finds that the FBI has not established a law enforcement objective to allow

withholding any documents under Exemption 7.

### C. Exemption 7(A), Pending Law Enforcement Proceedings

Exemption 7(A) provides that "records or information compiled for law enforcement purposes" may be withheld if they "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7). The FBI is asserting Exemption 7(A) for the withholding of "both control file numbers of pending FBI investigations and for the withholding of particular pages in full." Suppl. Hardy Decl. ¶ 16. Moreover, the FBI asserts that "the release of the information could reasonably be expected to interfere with these ongoing enforcement proceedings" and "it is not possible to segregate portions of these pages." *Id.*

Plaintiffs do not dispute that the control file numbers should be withheld under Exemption 7(A). However, plaintiffs argue that the FBI's conclusory assertion that the documents will interfere with ongoing investigations is insufficient. The Court agrees.

The government's declaration and Vaughn index must be "detailed enough for the district court to make a de novo assessment of the government's claim of exemption." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). For Exemption 7(A), the government must explain "*how* releasing each of the withheld documents would interfere with the government's ongoing criminal investigation." *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1084 (9th Cir. 2004) (emphasis added). Here, the FBI is relying upon "conclusory and generalized allegations of exemptions" when it states only that the information "could reasonably be expected" to interfere with pending enforcement proceedings without explaining how or why. *Church of Scientology*, 611 F.2d at 742. The Court cannot make an assessment of the FBI's claim without any basis other than the FBI's bald assertion.

Therefore, the Court finds that the FBI's declaration is insufficient to allow withholding under Exemption 7(A).

### D. Exemption 6 and 7(C), Privacy

Exemption 6 and Exemption 7(c) both exempt the release of records which would constitute an "unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Exemption 6 covers "personnel and medical files and similar files," and only allows withholding files which "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(c) covers "records or information compiled for law enforcement purposes," and allows withholding files which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In this case, the FBI has asserted Exemption 6 every time it has asserted Exemption 7(C). Vaughn Index.

The FBI applied Exemptions 6 and 7(c) to protect the privacy interest in the names or identifying information of four types of people: (1) FBI agents and support personnel, (2) third parties who provided information to the FBI, (3) third parties merely mentioned in the documents, and (4) local law enforcement officers. Hardy Decl. ¶¶ 57-63. Plaintiffs do not challenge the first category, but they argue that the FBI makes only conclusory assertions supporting the last three categories, and that the harm to privacy is outweighed by the public interest in disclosure.

For third parties who provided information to the FBI, the FBI asserts generally that its "experience has shown" that individuals interviewed by the FBI may suffer negative consequences if their identity is revealed. Hardy Decl. ¶ 61. The FBI then asserts – without giving any reasons why – that disclosure of the third party's identity "would shed no light on the operations and activities of the FBI," and concludes that "the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of his or her personal privacy." *Id.*

The FBI makes similar conclusory statements regarding the identity of persons merely mentioned in the documents: "the FBI has determined that these third parties have substantial privacy interests in not having information found about them found in records of the FBI" because in general disclosure carries a "negative connotation" and can lead to "possible harassment or criticism." *Id.* ¶ 62. The FBI again asserts, without saying why, that disclosure "would shed no light on the operations and activities of the FBI," and therefore would constitute "a clearly unwarranted and unwarranted invasion of their personal privacy." *Id.* Additionally, the FBI makes almost verbatim assertions and conclusions regarding local law enforcement officers. *Id.* ¶ 63.

The Ninth Circuit has held that "[t]he privacy interests of third persons whose names appear in FBI files, the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances." *Wiener*, 943 F.2d at 985. However, here the FBI provided no information specific to these third parties that allows the Court to weigh the privacy interests against the public interest. If "it cannot be concluded that the privacy interests characteristically outweigh the public interest with respect to all of the documents withheld under Exemption 7C," then the FBI's declaration is inadequate. *Id.* For example, as plaintiffs point out, the identities of many Occupy protestors and local police officers were covered extensively by the news media. These persons' privacy interests will be less than other individuals who have not become public figures. But the FBI's general statements and conclusions do not allow the Court to balance these interests.

Therefore, the Court finds that the FBI's declaration is insufficient to allow withholding under Exemptions 6 and 7(C).

### E. Exemption 7(D), Confidential Sources

Exemption 7(D) provides that "records or information compiled for law enforcement purposes" may be withheld if they "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7). The Supreme Court has held that Exemption 7(D) only applies if " the particular *source* spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original). It is the government's burden to "make an individualized showing of confidentiality with respect to each source"; confidentiality cannot be presumed. *Id.* at 174, 178.

The FBI asserts that it is withholding documents under Exemption 7(D) because "individuals who assisted the FBI . . . [were] under an 'express' assurance of confidentiality." Hardy Decl. ¶ 68. The FBI explains that it "expressly promised the third-party interviewees that their identities and the information they provided would not be disclosed." *Id.* In response to plaintiffs' arguments that this declaration was not based on the personal knowledge of the declarant, the FBI explained that the fact that the third-parties were given express promises "is evident from the face of the documents, which

13

reflect that they contain information from a confidential human source." Suppl. Hardy Decl. ¶ 17. The FBI further clarified that, "[b]ased on the contents of the documents, it was appropriate for the FBI to infer that, given the seriousness of the potential crime and the position of the sources, the information was provided with the expectation of confidentiality." *Id.*

The Ninth Circuit has held that the government "must provide the court and the FOIA requester with information sufficient to determine whether the source was truly a confidential one and why disclosure of the withheld information would lead to exposure of the source." *Wiener*, 943 F.2d at 980. A "bald assertion that express assurances [of confidentiality] were given amounts to little more than recitation of the statutory standard, which . . . is insufficient." *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) (finding an affidavit declaring that "this information was received with the explicit understanding that it would be held in the strictest confidence. It is obvious from the released information that these sources warrant confidentiality" was insufficient); *see also Campbell*, 164 F.3d at 34-35 (finding the government failed to present "probative evidence" that there was confidentiality, and the FBI's declaration that "simply asserts that various sources received express assurances of confidentiality without providing any basis for the declarant's knowledge of this alleged fact" was insufficient).

The Court finds that, similar to the declarations in *Wiener*, *Billington*, and *Campbell*, the FBI in the instant case has failed to provide any probative evidence that there were express or implied assurances of confidentiality. The declarant David Hardy has no personal knowledge of the facts. While it may be "evident from the face of the documents" to him that the sources were expressly assured confidentiality, it is not evident to the Court or to plaintiffs. Moreover, the FBI's fails to even make the barest assurances that the identifying information of the confidential sources cannot be segregated.

Therefore, the Court finds that the FBI's declaration is insufficient to allow withholding under Exemption 7(D).

### F. Exemption 7(E), Investigative Techniques

Finally, the last Exemption asserted by the FBI is Exemption 7(E). This exemption provides that "records or information compiled for law enforcement purposes" may be withheld if they "would

disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7). However, "Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815.

The FBI asserts Exemption 7(E) for two types of information: (1) investigative techniques and procedures, and (2) identity of FBI units. For investigative techniques, the FBI asserts that "[d]isclosure of this information could enable subjects to circumvent similar currently used techniques and procedures by law enforcement." Hardy Decl. ¶ 71. The FBI further explained that "[w]hile these techniques may be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques, to include the specifics of how and in what setting they are employed, is not generally known to the public." Suppl. Hardy Decl. ¶ 18

Although the FBI is not entitled to withhold investigatory procedures, it is entitled to withhold "technical analysis" of the techniques and procedures used to conduct law enforcement investigations that are not generally known. *See, e.g.*, *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1228 (9th Cir. 1991). The FBI's conclusory assertion that, even though the technique is generally known, the specifics on how and when the technique is used is not generally known, is not adequate. The Ninth Circuit has rejected a similar argument. *Rosenfeld*, 57 F.3d at 815 (holding that the government "simply by saying that the 'investigative technique' at issue is not the practice but the application of the practice to the particular facts underlying that FOIA request" cannot be adequate under Exemption 7(E) because otherwise it would prove too much). The Court finds that the FBI's assertion that the public is unaware of the specifics of how and when a technique is employed is not enough to sustain a withholding under Exemption 7(E).

Second, the FBI asserts that disclosure of the identity of the FBI units may reveal information about a technique unknown to the public (citing a hypothetical example of a "Supermarket Cyber Unit"). Hardy Decl. ¶ 72; Suppl. Hardy Decl. ¶ 19. Additionally, the FBI asserts that the unit identities taken together, even if generally known, could "establish a pattern or 'mosaic'" which "may alert individuals to the type and level of focus of particular activities." *Id.*

This Court has recently rejected similar arguments regarding the applicability of Exemption 7(E) to identity of FBI units. *Elec. Frontier Found. v. Dep't of Def.*, C 09-05640 SI, 2012 WL 4364532

15

(N.D. Cal. Sept. 24, 2012). As in the declaration in that case, the FBI has not sufficiently met its burden in this case. First, although the FBI states that a unit title "may" reveal an investigative technique, and proffered a hypothetical example, the FBI has not shown that any of the unit titles in the withheld documents are unknown by the public. Second, the FBI's "mosaic" theory fails to delineate how, in this case, a technique unknown by the public will be revealed. The mere application of a known technique to a particular set of facts is not enough to withhold information under Exemption 7(E). *Rosenfeld*, 57 F.3d at 815. Therefore, the Court finds that the FBI's declaration is insufficient to allow withholding under Exemption 7(E).

Accordingly, the Court ORDERS the FBI to provide a further supplemental declaration addressing the concerns the Court has found regarding the FOIA exemptions asserted for withholding information. That supplemental declaration shall be provided to the Court within thirty (30) days of the date of this Order.

### III. Non-Responsive Redactions from the Coast Guard

The FBI also found two responsive documents that originated with the U.S. Coast Guard, totaling thirteen pages. One was an intelligence message that is a daily summary "which contains information on a variety of maritime topics from across the nation primarily generated by other Coast Guard units." Declaration of Peter J. Hatch ("Hatch Decl.") ¶ 7. The message contained six topics; one concerned Occupy, and the other five topics included captured drugs, ship crews, and ship security. *Id.* The Coast Guard redacted these five topics as non-responsive. *Id.* The second document is an information intelligence report on Occupy Oakland. *Id.* The Coast Guard withheld portions of the report pursuant to FOIA Exemptions 3, 6, and 7(E). *Id.* ¶ 9. The Coast Guard also determined that only paragraphs 1-5 of the report were responsive to the request; these paragraphs span three of the six pages of the document. *Id.* It withheld the remaining three pages of the report as non-responsive, explaining that they are "address lists and handling instructions." *Id.*

Plaintiffs do not challenge the Coast Guard's withholdings under the FOIA exemptions. However, they argue that the Coast Guard cannot redact portions of a responsive document because the information in those paragraphs are outside the scope of the request.

16

FOIA carries a "strong presumption in favor of disclosure." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The government under FOIA is obligated to produce all records which fall within the scope of a request. 5 U.S.C. § 552(a)(3). The government, however, "has no obligation to produce information that is not responsive to a FOIA request," and therefore the redaction of information outside the scope of a request is proper. *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010) *aff'd*, 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010) (citations and quotations omitted); *accord Dunaway v. Webster*, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981). However, "the agency should err on the side of liberally construing what material falls within the scope of the request" and should release any information "which relates to the subject of the request or which in any sense sheds light on, amplifies, or enlarges upon that material which is found in the same documents." *Dunaway*, 519 F. Supp. at 1083; *accord Islamic Shura Council of S. Cal. v. F.B.I.*, 278 F.R.D. 538, 540-41 (C.D. Cal. 2011) (finding that the FBI, although generally permitted to redact portions of documents outside the scope of the request, was not permitted to lie to the court when these redactions were actually for security reasons); *Powell v. U.S. Dep't of Justice*, 584 F. Supp. 1508, 1530 (N.D. Cal. 1984) (applying *Dunaway* standard to *in camera* review). In *Dunaway*, the court ordered an *in camera* review, and only upheld redactions it was convinced they were "utterly unrelated to the subject of the plaintiff's request." 519 F. Supp. at 1083.

Given the purpose of FOIA and the strong presumption in favor of disclosure, the Court will review the non-responsive redactions in accordance with *Dunaway*, and will only uphold redactions if it is utterly convinced that they do not shed light on, amplify, or enlarge upon that responsive information.

If the FBI wishes to alter or eliminate the non-responsive redactions in light of the *Dunaway* standard as articulated in this order, it may do so. As to all remaining non-responsive redactions, the Court ORDERS that the FBI either produce these withheld documents for *in camera* review within 30 days of the date of this order.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for summary judgment, and

GRANTS IN PART and DENIES IN PART plaintiffs' motion for summary judgment. The Court ORDERS that, within 30 days of the date of this order, defendant shall supplement its declaration consistent with the concerns articulated in this order regarding both the adequacy of the search and the exemptions asserted for withholding information, and produce any redactions from the Coast Guard documents it is withholding as non-responsive for *in camera* review.

**IT IS SO ORDERED.**

Dated: July 1, 2013

SUSAN ILLSTON
United States District Judge