IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA; and SAN
FRANCISCO BAY GUARDIAN,

        Plaintiffs,

  v.

FEDERAL BUREAU OF INVESTIGATION,

        Defendant.
_____/

No. C 12-03728 SI

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

      The parties have filed cross-motions for summary judgment. After careful consideration of the arguments of counsel and the papers submitted, the Court grants in part and denies in part the FBI's motion for summary judgment and denies plaintiffs' motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

      This action arises under the Freedom of Information Act, 5 U.S.C. § 552. On March 8, 2012, plaintiffs American Civil Liberties Union of Northern California and the *San Francisco Bay Guardian* submitted a FOIA request to the Federal Bureau of Investigations for records pertaining to the "Occupy" movement. Docket No. 22-1, First Hardy Decl. ¶ 7, Ex. A. Specifically, plaintiffs requested the following materials:

      1) Records created, received, gathered or maintained by the FBI (including but not limited to sub-entities within the FBI such as the Joint Terrorism Task Force, the Campus Liaison Initiative, and the Academic Alliance Program) since June 1, 2011 pertaining to persons, planning, assemblies, marches, demonstrations, or any other activity associated with movements referring to themselves as Occupy Oakland, Occupy

United States District Court
For the Northern District of California

San Francisco, Occupy Cal, or Occupy UC Davis.

2) Intelligence Bulletins referring to the "Occupy" movement generally or any geographically specific Occupy movement.

3) Training for FBI agents regarding the Occupy movement generally or any geographically specific Occupy movement.

4) Written materials related or referring to the Occupy movement generally of any geographically specific Occupy movement and setting forth or referring to legal reasoning or authority relied upon by the FBI with respect to its investigatory and enforcement activities.

*Id.* On March 26, 2012, the FBI informed plaintiffs that their request had been approved for expedited processing and a search for responsive records had begun. *Id.* ¶ 9, Ex. C. On May 17, 2012, plaintiffs asked the FBI when they could expect to receive the responsive records, and, having received no response, plaintiffs filed the present action in this Court two months later. *Id.* ¶¶ 10-11, Ex. D. On August 24, 2012, the FBI released 13 pages to plaintiffs, out of 37 responsive pages, explaining that it had withheld 24 pages in full pursuant to FOIA exemptions. *Id.* ¶ 12, Ex. E. After receiving clarification of plaintiffs' request in October, the FBI found three more responsive pages, and withheld all three pages pursuant to FOIA exemptions. *Id.* ¶ 13, Ex. F.

On December 21, 2012, the FBI filed a motion for summary judgment, and on January 18, 2013, plaintiffs filed a cross motion for summary judgment. Docket No. 22-23. In their cross motion, plaintiffs argued that the FBI's search for responsive documents was inadequate, and that the FBI was improperly withholding information pursuant to FOIA exemptions. On July 1, 2013, the Court denied the FBI's motion for summary judgment, and granted in part and denied in part plaintiffs' motion for summary judgment. Docket No. 32. The Court concluded that the FBI had failed to establish that it had conducted an adequate search and had failed to establish that the claimed FOIA exemptions applied to the withheld information. *Id.* at 7, 16. The Court ordered the FBI to file a supplemental declaration addressing the concerns mentioned in the order. *Id.*

On July 31, 2013, the FBI filed supplemental declarations and submitted an additional declaration for *ex parte*, *in camera* review. Docket Nos. 33-35. Subsequently, the parties filed the present cross motions for summary judgment. Docket Nos. 43, 47. In the motions, the parties move for summary judgment of whether the FBI's withholding of information pursuant to certain FOIA

exemptions is proper.  In their motion, plaintiffs no longer challenge the adequacy of the FBI's search for responsive documents.

**LEGAL STANDARDS**

**I.      Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, the evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

*United States District Court*
*For the Northern District of California*

## II.     FOIA

It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988). "[FOIA] was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). Consistent with this purpose, there is a strong presumption in favor of disclosure. *See id.* "However, FOIA contains a number of exemptions." *Ctr. for Biological Diversity v. USDA*, 626 F.3d 1113, 1116 (9th Cir. 2010) (citing 5 U.S.C. § 552(b)); *see also Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009) ("FOIA contemplates that some information may legitimately be kept from the public."). The Supreme Court has explained that "these exemptions 'must be narrowly construed.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 154 (1989).

The government agency bears the ultimate burden of proving that a particular document or redaction falls within one of the nine statutory exemptions to the disclosure requirement. *See Ray*, 502 U.S. at 173; *Lahr v. NTSB*, 569 F.3d at 973. "[G]overnment agencies seeking to withhold documents requested under the FOIA [are] required to supply the opposing party and the court with a '*Vaughn* index,'[1] identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991). The government may submit affidavits to satisfy its burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980)). The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id.* (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)); *see also Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) ("To justify withholding, the government must provide tailored reasons in response to a FOIA request. It may not respond with boilerplate or conclusory statements.").

Even if an exemption is applicable, an agency may only withhold that information to which the

---

[1] Named after the D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

United States District Court
For the Northern District of California

1  exemption applies.  *Yonemoto v. VA*, 686 F.3d 681, 688 (9th Cir. 2012).  Therefore, the agency must

2  provide all "reasonably segregable" portions of the records to the requester.  *Id.*; 5 U.S.C. § 552(b).

3  Under this standard, "non-exempt portions of a document must be disclosed unless they are inextricably

4  intertwined with exempt portions."  *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566

5  F.2d 242, 260 (D.C. Cir. 1977).  "The burden is on the agency to establish that all reasonably segregable

6  portions of a document have been segregated and disclosed."  *Pac. Fisheries, Inc. v. United States*, 539

7  F.3d 1143, 1148 (9th Cir. 2008).  "To meet its burden in this regard, the agency must 'provide[] a

8  detailed justification and not just conclusory statements.'"  *Charles v. Office of the Armed Forces Med.*

9  *Exam'r*, 2013 U.S. Dist. LEXIS 143076, at *19 (D.D.C. Oct. 2, 2013); *see also Wilderness Soc'y v.*

10  *United States DOI*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) ("[A] blanket declaration that all facts are so

11  intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of

12  non-segregability.")

13

14                                              **DISCUSSION**

15  **I.    Exemption 1, National Security**

16          Exemption 1 under FOIA permits the government to withhold documents and portions of

17  documents which have been properly classified pursuant to an Executive Order for the purposes of

18  national security.  5 U.S.C. § 552(b)(1).  "Though an executive agency's classification decisions are

19  accorded substantial weight, the FOIA permits challenges to Exemption 1 withholdings, requires the

20  district court to review the propriety of the classification, and places the burden on the withholding

21  agency to sustain its Exemption 1 claims."  *Wiener*, 943 F.2d at 980.  To meet its burden, the

22  government should describe the particular withheld document, identify the kind of information found

23  in that document that would expose confidential sources or intelligence activity, and describe the injury

24  to national security that would follow from the disclosure of the withheld information in the particular

25  document.  *Id.*  A generalized, theoretical discussion of the possible harms which can result from the

26  release of the withheld information is insufficient.  *Id.* at 981.

27          The FBI withheld in full pursuant to Exemption 1 a single two-page document described as a

28  "[r]eport documenting contact with confidential human source."  Docket No. 22-1, First Hardy Decl.

United States District Court
For the Northern District of California

Ex. H ("*Vaughn* Index").  The FBI classified these withheld pages as "Secret" pursuant to Executive Order 13526, and asserted that the unauthorized disclosure of this information "reasonably could be expected to cause serious damage . . . to national security." *Id.* ¶ 31.  In its original declaration, the FBI stated that it "protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security: (A) file numbers;[2] (B) detailed intelligence activity information compiled regarding a specific individual or organization of national security interest; and (C) intelligence sources." *Id.* ¶ 36.  It then listed the generalized security risks that may stem from the release of these three categories of information. *See id.* ¶¶ 38-46.

In its prior order, the Court found the FBI's declaration inadequate to sustain its burden of establishing the applicability of Exemption 1.  Docket No. 32 at 8-9.  In response, the FBI submitted an additional declaration for *ex parte*, *in camera* review.  Docket No. 35.  Plaintiffs argue that the FBI's submission of a declaration for *ex parte, in camera* review is improper because it deprives plaintiffs of their ability to assess or contest the validity of the FBI's assertion of Exemption 1.  Pl.'s Mot. at 23-24.  Plaintiffs further argue that to the extent *in camera* review is appropriate, the FBI should be required to submit the withheld document itself in addition to the FBI's declaration. *Id.*  The FBI argues that *ex parte*, *in camera* review is proper because a more detailed discussion about the document on the public record would divulge the very information that is exempt and would potentially compromise the intelligence source.  Def.'s Mot. at 22-23.

The Ninth Circuit has explained that "[*i*]n camera review of the withheld documents by the court is not an acceptable substitute for an adequate *Vaughn* index.  *In camera* review does not permit effective advocacy."  943 F.2d at 979.  Therefore, *in camera* review is only "justified where 'the government's public description of a document and the reasons for exemption may reveal the very information that the government claims is exempt from disclosure.'" *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004).  Further, "resort to *in camera* review is appropriate only after 'the government has submitted as detailed public affidavits and testimony as possible.'" *Wiener*, 943 F.2d

---

[2] Plaintiffs do not dispute the withholding of file numbers.

at 979.

The Court has reviewed the FBI's *ex parte, in camera* declaration.  The contents of the declaration adequately describe the withheld document, identify the kind of information that would expose confidential sources and intelligence activity, and describe the injury to national security that would follow from the disclosure of the information in the withheld document.  Accordingly, the Court concludes that the FBI has met it burden of establishing the applicability of Exemption 1 to the document. *See Wiener*, 943 F.2d at 981.  In addition, the Court concludes that *in camera* review of the withheld document itself is unnecessary.

However, the Court disagrees with the FBI's contention that *ex parte, in camera* review of the declaration is appropriate.  The declaration does not appear to reveal the very information that the government claims is exempt from disclosure.  Accordingly, the Court orders the FBI to—within 30 days from the date this order is filed—either (1) publicly file the *ex parte, in camera* declaration or (2) publicly file an additional declaration explaining how the *ex parte, in camera* declaration itself reveals the very information that is exempt from disclosure.

## II.       Exemption 7, Law Enforcement Objective

Exemption 7 under FOIA permits the government to withhold "records or information compiled for law enforcement purposes" under certain enumerated conditions.  5 U.S.C. § 552(b)(7).  The FBI has withheld multiple documents under several categories of this exemption:  Exemption 7(A) for interference with enforcement proceedings, Exemption 7(C) for unwarranted invasion of personal privacy, Exemption 7(D) for disclosure of a confidential source, and Exemption 7(E) for disclosure of investigative techniques. *See* Docket No. 34-1, Third Hardy Decl. ¶¶ 11-23; Docket No. 22-1, *Vaughn* Index.  Plaintiffs argue that the FBI has failed to adequately satisfy the "law enforcement purposes" threshold requirement for Exemption 7.

"An agency which has a clear law enforcement mandate, such as the FBI, need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed." *Church of Scientology*, 611 F.2d at 748.  "The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate." *Rosenfeld v. U.S. Dep't*

*of Justice*, 57 F.3d 803, 808 (9th Cir. 1995).  However, "generalized monitoring and information-gathering" do not suffice for Exemption 7.  *Id.* at 809.  Moreover, "[i]nformation need not have been originally compiled for law enforcement purposes in order to qualify for the 'law enforcement' exemption, so long as it was compiled for law enforcement purposes at the time the FOIA request was made." *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citing *John Doe Agency*, 493 U.S. at 155).

In its declaration, the FBI asserts that the documents at issue were gathered pursuant to the dual law enforcement purposes of the FBI's general investigative authority per 28 U.S.C. §§ 533 and 534 and the FBI's assigned lead role in investigating terrorism and in the collection of terrorism threat information.  Docket No. 34-1, Third Hardy Decl. ¶ 11.  The FBI made these same assertions in its prior declaration.  *See* Docket No. 26-1, Second Hardy Decl. ¶ 15.  In its prior order, the Court explained that this assertion by itself was insufficient to establish a nexus.  Docket No. 32 at 10.  The Court noted that to meet its burden, the FBI must cite the specific laws it was enforcing.  *Id.* (citing *Wiener*, 943 F.2d at 985).

In response, the FBI states in its declaration that the records at issue were compiled as a result of assistance the FBI rendered to various state and local law enforcement agencies which were investigating potential criminal activity by protestors involved with the "Occupy" movement.  Docket No. 34-1, Third Hardy Decl. ¶ 12.  The FBI states that it may provide assistance to state and local law enforcement in the investigation of matters that may involve federal crimes, as relevant here, domestic terrorism, 18 U.S.C. § 2331,[3] and advocating overthrow of government, 18 U.S.C. § 2385.[4]  *Id.*  The FBI

---

[3] 18 U.S.C. § 2331(5) provides:

the term "domestic terrorism" means activities that—

(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;

(B) appear to be intended—

   (i) to intimidate or coerce a civilian population;

   (ii) to influence the policy of a government by intimidation or coercion; or

United States District Court
For the Northern District of California

also explains that the records were also compiled as part of the FBI's core counter terrorism function as the lead agency responsible for investigating all crimes "which involve terrorist activities or acts in preparation of terrorist activities within the statutory jurisdiction of the United States." *Id.* (quoting 28 C.F.R. § 0.85(l)). The FBI specifically states: "These records are not relating to generalized law enforcement sharing. The records were compiled while actively assisting state and local law enforcement agencies and assessing potential terrorist threats." *Id.* ¶ 16.

Although the FBI's current declaration provides more detail than the prior declarations, the Court concludes that it is still insufficient to satisfy Exemption 7's threshold requirement. In the declaration, the FBI has adequately provided the Court with a legitimate law enforcement purpose—the investigation of domestic terrorism. However, the FBI has failed to adequately establish a nexus

---

(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily within the territorial jurisdiction of the United States.

[4] 18 U.S.C. § 2385 provides:

Whoever knowingly or willfully advocates, abets, advises, or teaches the duty, necessity, desirability, or propriety of overthrowing or destroying the government of the United States or the government of any State, Territory, District or Possession thereof, or the government of any political subdivision therein, by force or violence, or by the assassination of any officer of any such government; or

Whoever, with intent to cause the overthrow or destruction of any such government, prints, publishes, edits, issues, circulates, sells, distributes, or publicly displays any written or printed matter advocating, advising, or teaching the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence, or attempts to do so; or

Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence; or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof—

Shall be fined under this title or imprisoned not more than twenty years, or both, and shall be ineligible for employment by the United States or any department or agency thereof, for the five years next following his conviction.

. . .

As used in this section, the terms "organizes" and "organize", with respect to any society, group, or assembly of persons, include the recruiting of new members, the forming of new units, and the regrouping or expansion of existing clubs, classes, and other units of such society, group, or assembly of persons.

between the documents at issue and that legitimate law enforcement purpose. *See Church of Scientology*, 611 F.2d at 748. The agency must provide sufficient facts demonstrating that "'the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality.'" *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) ("'[T]he agency's basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable.'"). The only factual information that the FBI provides about the investigation related to the records at issue is that the investigation involved "potential criminal activity by protestors involved with the 'Occupy' movement." Docket No. 34-1, Third Hardy Decl. ¶ 12. This statement by itself is insufficient to establish that the FBI has a rational, colorable claim that the documents are related to the investigation of domestic terrorism. The FBI must provide the particular criminal activity of which the protestors were allegedly suspected.

The present case is similar to the Ninth Circuit's decision in *Wiener v. FBI*, 943 F.2d 972. In *Wiener*, the FBI's *Vaughn* index stated "only that John Lennon was under investigation for possible violations of the Civil Obedience Act of 1968, 18 U.S.C. § 231 (1988), and the Anti-Riot Act, 18 U.S.C. § 2101 (1988), because of his association with a radical group known as the Election Year Strategy Information Center (EYSIC)." *Id.* at 985-86. The Ninth Circuit explained:

> The Civil Obedience Act and the Anti-Riot Act are very broad criminal statutes, prohibiting a wide variety of conduct. Citations to these statutes do little to inform [plaintiff] of the claimed law enforcement purpose underlying the investigation of John Lennon. Without providing [plaintiff] with further details of the kinds of criminal activity of which John Lennon was allegedly suspected, [plaintiff] cannot effectively argue that the claimed law enforcement purpose was in fact a pretext.

*Id.* at 986. Here, 18 U.S.C. § 2331 and 18 U.S.C. § 2385, like the Civil Obedience Act and the Anti-Riot Act, are "very broad criminal statutes." *Id.* Therefore, without further details of the kinds of criminal activity of which the subjects of the investigation were allegedly suspected, the Court cannot determine if an adequate nexus existed. *See id.*

Moreover, the Court rejects the argument presented by the FBI at the hearing that it has established a sufficient nexus simply because the documents are contained in a counter terrorism database regardless of whether the documents are actually related to any unlawful activity. The Ninth

Circuit has explained that generalized monitoring and information-gatherin0g, without any connection to possible criminal liability, is insufficient to satisfy Exemption 7's threshold requirement.  *See Rosenfeld*, 57 F.3d at 809.  Therefore, even if the documents are contained in a counter terrorism database, the FBI must still provide the Court with a sufficient description of the alleged criminal activity to establish the applicability of Exemption 7.  Accordingly, the Court concludes that the FBI has failed to establish the threshold requirement of "a law enforcement purpose" to allow the withholding of documents under Exemption 7.

### A.    Exemption 7(A), Pending Law Enforcement Proceedings

Exemption 7(A) provides that "records or information compiled for law enforcement purposes" may be withheld if they "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  To establish the applicability of Exemption 7(A), the government must explain "how releasing each of the withheld documents would interfere with the government's ongoing criminal investigation."  *Lion Raisins*, 354 F.3d at 1084.  However, "'the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding.'"  *Shannahan*, 672 F.3d at 1150.

The FBI originally withheld five records pursuant to Exemption 7(A).  Docket No. 34-1, Third Hardy Decl. ¶ 17.  The FBI states that upon communication with Special Agents in the field, it has now determined that the exemption no longer applies to four of the five records.  *Id.*  Therefore, the FBI only contends that Exemption 7(A) applies to the fifth record, an intelligence report entitled "Intelligence related to potential sovereign activity in Arkansas."  *Id.*

In their motion, plaintiffs do not contest the applicability of Exemption 7(A) to the intelligence report.  Rather, plaintiffs only argue that the FBI has failed to establish that the withheld information is not reasonably segregable.  Pl.'s Mot. at 17-18.  The Court agrees with plaintiffs.

The FBI states in the declaration that the Special Agent "overseeing the investigations at issue advised that some of the information contained in [the intelligence report] pertain[s] to pending investigations which are currently being investigated with the assistance of an active FBI source."  Docket No. 34-1, Third Hardy Decl. ¶ 17.  In this declaration, the FBI concedes that only some of the

United States District Court
For the Northern District of California

information pertains to pending investigations. However, the FBI fails to provide an adequate explanation of why the remaining information is not segregable. The FBI merely notes that the underlying reporting and analysis in the document was condensed to provide the audience with an essential understanding of the threat and proposed action outlined in the document. Def.'s Mot. at 10. But, the fact that the document is condensed does not explain why it is not segregable. Accordingly, the Court concludes that the FBI has failed to meet its burden of establishing that the document is not segregable.

### B.    Exemption 6 and 7(C), Privacy

Exemption 6 and Exemption 7(C) both exempt the release of records which would constitute an "unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Exemption 6 covers "personnel and medical files and similar files" and Exemption 7(C) covers "records or information compiled for law enforcement purposes." *Id.* The standard for Exemption 6 is higher in that it requires the disclosure of the files to constitute a "clearly unwarranted" invasion of privacy, whereas Exemption 7(C) only requires that the disclosure "could reasonably be expected to constitute" such an invasion. *Id.*; *see also Lahr v. NTSB*, 569 F.3d 964, 974 (9th Cir. 2009) ("[A]lthough both exemptions require the court to engage in a similar balancing analysis, they 'differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions.'"). "Both [Exemption 6 and Exemption 7(C)] require a balancing of the public interest in disclosure against the possible invasion of privacy caused by the disclosure." *Hunt v. FBI*, 972 F.2d 286, 287 (9th Cir. 1992).

Here, the FBI has asserted Exemption 6 every time it has asserted Exemption 7(C). *See* Docket No. 34-1, Third Hardy Decl. ¶ 20; Docket No. 22-1, *Vaughn* Index. The FBI applied Exemptions 6 and 7(C) to protect the privacy interests in the names or identifying information of four types of people: (1) FBI agents and support personnel, (2) third parties who have provided information to the FBI, (3) third parties merely mentioned in the documents, and (4) local law enforcement officers. Docket No. 22-1, First Hardy Decl. ¶¶ 57-63; Docket No. 34-1, Third Hardy Decl. ¶ 20. Plaintiffs do not challenge the first category. Pl.'s Mot. at 19 n.22. Plaintiffs argue that with respect to the last three categories, the public interest in disclosure outweighs the privacy interests. Pl.'s Mot. at 18-20.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

With respect to third parties who have provided information to the FBI and third parties merely mentioned in the documents, in its prior order, the Court explained that the FBI's declaration was too conclusory to establish the applicability of Exemptions 6 and 7©.  Docket No. 32 at 12-13.  The Court concludes that the current declaration is still too conclusory.[5]  For third parties who have provided information to the FBI, the FBI merely states that these individuals have an interest in the nondisclosure of their identities and their connection with the events described in the record because of the potential for future retaliation, embarrassment, harassment, or unnecessary judgment.  Docket No. 34-1, Third Hardy Decl. ¶ 20.  For third parties who are merely mentioned in the documents, the FBI states that the information about these third parties appear in the records by happenstance, and that the release of this information would subject the individual to unnecessary criticism, harassment, derogatory inferences, and undue suspicion.  *Id.*  For both groups of individuals, the FBI asserts that the information will not shed any light on the FBI's performance of its statutory duties.  *Id.*

Under Ninth Circuit law, "[t]he privacy interests of third persons whose names appear in FBI files, the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances."  *Wiener*, 943 F.2d at 985.  The Court has explained to the FBI that it cannot conduct this balancing without a description of the circumstances surrounding these third parties.[6]  Docket No. 32 at 13; *see also Kamman*, 56 F.3d at 48 (explaining that an affidavit must "'allege facts sufficient to establish an exemption'").  Accordingly, the Court concludes that the FBI has failed to establish the applicability of Exemption 6 and Exemption 7(C) to the names or identifying information of these individuals.

With respect to local law enforcement officers, the FBI asserts that these officers have a privacy interest in the nondisclosure of their identities, and the officers have not been stripped of their privacy rights simply because they are public servants.  Docket No. 34-1, Third Hardy Decl. ¶ 20.  The FBI

---

[5] Indeed, the FBI's current declaration contains largely the same general statements and conclusions that were in its prior declaration, which the Court found insufficient.  *Compare* Docket No. 34-1, Third Hardy Decl. ¶ 20 *with* Docket No. 22-1, First Hardy Decl. ¶¶ 61-62.

[6] The FBI should be able to explain to the Court why it is reasonable to conclude that the third parties might be subject to retaliation, harassment, or other negative consequences if their names are revealed; how their names appear in the record only by mere happenstance; and why the release of their names would not shed any light of the FBI's performance of its statutory duties.

United States District Court

For the Northern District of California

1  further contends that releasing the names of these officers would not shed any further light on the FBI's

2  performance of its statutory duties because the names of the state and local departments that the FBI has

3  worked with have already been released.  *Id.*

4       "[I]ndividuals do not waive all privacy interests in information relating to them simply by taking

5  an oath of public office, but by becoming public officials, their privacy interests are somewhat reduced."

6  *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001).  Law enforcement officers "have

7  a legitimate interest in keeping private matters that could conceivably subject them to annoyance or

8  harassment."  *Hunt v. FBI*, 972 F.2d 286, 288 (1992).  In particular, officers "retain an interest in

9  keeping private their involvement in investigations of especially controversial events."  *Lahr v. NTSB*,

10  569 F.3d 964, 977 (9th Cir. 2009).  In their motion, plaintiffs detail the extensive media attention both

11  the Occupy movement and local law enforcement's response to the movement has received.[7]  Pl.'s Mot.

12  at 2-3.  Therefore, the FBI has sufficiently shown that these local law enforcement officers have a

13  legitimate interest in keeping their individual names private.  Moreover,  plaintiffs have failed to offer

14  a sufficient public interest justification for releasing these officers' identities.  Plaintiffs argue that

15  information about local law enforcement sheds light on the FBI's conduct.  However, plaintiffs fail to

16  specifically explain how these individual officers' identities would shed light on the FBI's conduct.

17  Particularly, in light of the fact, as noted by the FBI, that the names of the state and local departments

18  that the FBI has worked with have already been released.  Accordingly, the Court concludes that the FBI

19  has sufficiently established the applicability of Exemption 6 to the names or identifying information of

20  the local law enforcement officers.  The FBI has also sufficiently established the applicability of

21  Exemption 7(C) to the names or identifying information of the local law enforcement officers provided

22  that the FBI can later establish that the documents were compiled for law enforcement purposes.

23       However, the Court agrees with plaintiffs that the FBI has failed to prove that the documents

24  withheld pursuant to these two exemptions are not reasonably segregable.  The FBI's declaration merely

25  states that all reasonably segregable information has been released.  Docket No. 34-1, Third Hardy Decl.

26  ¶ 24.  The declaration contains no explanation of why these withheld documents are not reasonably

27

28       [7] The controversy and media attention surrounding the Occupy movement renders the present
case distinguishable from *Lissner*, which plaintiffs rely on in their briefing.

segregable.  A blanket statement that the documents are not segregable or that all reasonably segregable information has been release is insufficient to satisfy the government's burden.  *See Wilderness Soc'y*, 344 F. Supp. 2d at 19 ("[A] blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability.").  Accordingly, the Court concludes that the FBI has failed to meet its burden of establishing that the documents withheld pursuant to Exemptions 6 and 7(C) are not reasonably segregable.

### C.      Exemption 7(D), Confidential Sources

Exemption 7(D) provides that "records or information compiled for law enforcement purposes" may be withheld if they "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  "Under this exemption, a source is 'confidential' if it 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"[8] *Rosenfeld*, 57 F.3d at 814 (quoting *United States Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).  "The focus, therefore, is not whether 'the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential.'"  *Id.* (quoting *Landano*, 508 U.S. at 172) (emphasis in original).  To meet its burden, the government must "make an individualized showing of confidentiality with respect to each source"; confidentiality cannot be presumed.  *Landano*, 508 U.S. at 174, 178.

The FBI contends that Exemption 7(D) applies to several of the withheld documents because there was either an express or implied assurance of confidentiality.  Docket No. 34-1, Third Hardy Decl. ¶¶ 21-22.  In response, plaintiffs argue that the FBI has presented insufficient evidence to establish that the sources where given express or implied assurances of confidentiality.  Pl.'s Mot. at 20-21.  In

---

[8] "Unlike Exemption 7(C), Exemption 7(D) requires no balancing of private and public interests." *Council on American-Islamic Rels., California v. FBI*, 749 F. Supp. 2d 1104, 1121 (S.D. Cal. 2010)

United States District Court
For the Northern District of California

addition, plaintiffs argue that the FBI has failed to prove that the documents are not reasonably segregable. *Id.* at 21.

The FBI contends that it has properly withheld four documents pursuant to Exemption 7(D) based on an express assurance of confidentiality. Docket No. 47-1, Fourth Hardy Decl. ¶ 3. The Ninth Circuit has explained that an express promise of confidentiality is "easy to prove: 'The FBI need only establish the informant was told his name would be held in confidence.'" *Rosenfeld*, 57 F.3d at 814 (quoting *Wiener*, 943 F.2d at 986). To do this, the government "must present 'probative evidence that the source did in fact receive an express grant of confidentiality.'" *Campbell*, 164 F.3d at 34. "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.*

The Court concludes that the FBI has presented sufficient probative evidence showing that these particular sources received an express grant of confidentiality. The FBI states that three of the documents were each entitled "CHS Reporting Document" and the fourth document contains notations that say "CHS." Docket No. 47-1, Fourth Hardy Decl. ¶¶ 3-4. "CHS" stands for Confidential Human Source. *Id.* ¶ 3. The FBI explains that the fact that the sources received this designation is a clear indication that there was a confidentiality agreement between the source and the FBI. Docket No. 34-1, Third Hardy Decl. ¶ 21. Plaintiffs argue that this evidence is insufficient to establish that the sources were actually given an express assurance of confidentiality. Pl.'s Reply at 12-13. Specifically, plaintiffs argue that the Attorney General Guidelines governing Confidential Human Sources do not require an express promise of confidentiality, citing the guidelines' initial validation requirements. *Id.* However, these same guidelines later state that when opening a Confidential Human Source, at least one FBI agent, along with another agent or government official, is required to instruct the CHS that "the United States Government will strive to protect the Confidential Human Source's identity but cannot guarantee

United States District Court
For the Northern District of California

that it will not be divulged."[9]  Docket No. 49, Lye Decl. Ex. 1 at 14.  Accordingly, the FBI has established that Exemption 7(D) applies to these four documents provided that the FBI can later establish that the documents were compiled for law enforcement purposes.

The FBI also contends that it may withhold certain documents because the source provided information to the FBI where a promise of confidentiality can be inferred.  Docket No. 34-1, Hardy Decl. ¶ 22.  The Supreme Court has explained that an implied assurance of confidentiality may arise "when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality." *Landano*, 508 U.S. at 181.  In order to establish an implied assurance of confidentiality, the government must "sufficiently describe[] circumstances that can provide a basis for inferring confidentiality." *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1063 (3d Cir. 1995); *see also Council on American-Islamic Rels*, 749 F. Supp. 2d at 1122 ("the agency must explain why, in the particular case, there was an implied assurance of confidentiality")

The FBI states that an assurance of confidentiality for these sources can be inferred because these sources are members of organized violent groups.  Docket No. 34-1, Hardy Decl. ¶ 22.  The FBI further explains that as such, they come in contact with criminal elements and share information that such criminal elements believe is not intended for disclosure to law enforcement.  *Id.*  Plaintiffs argue that the FBI's declaration is insufficient because it fails to explain how the groups to which the sources belong are "organized" and "violent."  Pl.'s Mot. at 21.  In addition, plaintiffs argue that the FBI has failed to identify the nature of the supposedly serious potential crime or the source's position to that crime. *Id.*

The Court concludes that the FBI's declaration is too vague to establish that an assurance of confidentiality can be implied in these circumstances.  The FBI does not explain what it means by the term "organized violent groups."  The declaration states that the individuals come in contact with criminal elements, but the FBI does not explain what types of criminals they are, whether they are violent, or whether they would retaliate against an individual for disclosing information to law

---

[9] In addition, the guidelines define the term "Confidential Human Source" as "any individual . . . whose identity, information or relationship with the FBI warrants confidential handling.  Docket No. 49, Lye Decl. Ex. 1 at 4.  The guidelines further provide that "DOJ Personnel have an obligation to maintain as confidential the identity of any Confidential Human Source."  *Id.* at 8.

1    enforcement.  In addition, the FBI does not describe what potential crime these sources were involved

2    in and what the source's position is to the crime.  Accordingly, the Court concludes that the FBI has

3    failed to establish the applicability of Exemption 7(D) to these sources.

4        Moreover, the Court agrees with plaintiffs that the FBI has failed to prove that the withheld

5    document are not reasonably segregable.  Again, the FBI has provided no explanation of why these

6    withheld documents are not reasonably segregable with respect to this exemption.  Therefore, the FBI

7    has failed to meet its burden of establishing that the documents are not segregable.  *See Wilderness*

8    *Soc'y*, 344 F. Supp. 2d at 19.

9

10       **D.       Exemption 7(E), Investigative Techniques**

11       Finally, the last Exemption asserted by the FBI is Exemption 7(E).  This exemption provides that

12   "records or information compiled for law enforcement purposes" may be withheld if they "would

13   disclose techniques and procedures for law enforcement investigations or prosecutions."  5 U.S.C. §

14   552(b)(7)(E).  Exemption 7(E) requires that the agency demonstrate logically how the release of the

15   requested information might create a risk of circumvention of the law.  *Mayer Brown LLP v. IRS*, 562

16   F.3d 1190, 1194 (D.C. Cir. 2009).  "Exemption 7(E) only exempts investigative techniques not generally

17   known to the public."  *Rosenfeld*, 57 F.3d at 815 ("It would not serve the purposes of FOIA to allow the

18   government to withhold information to keep secret a investigative technique that is routine and generally

19   known.").  "However, the government may withhold detailed information regarding a publicly known

20   technique where the public disclosure did not provide 'a technical analysis of the techniques and

21   procedures used to conduct law enforcement investigations.'"  *Elec. Frontier Found. v. CIA*, 2013 U.S.

22   Dist. LEXIS 142146, at *79 (N.D. Cal. Sept. 30, 2013) (citing *Bowen v. U.S. Food & Drug Admin.*, 925

23   F.2d 1225, 1228-29 (9th Cir. 1991)).

24       The FBI asserted Exemption 7(E) for five types of information: (1) database and database

25   information; (2) collection and/or analysis of information; (3) specific law enforcement techniques

26   utilized to conduct national security and intelligence investigations; (4) file numbers; and (5) the identity

27   of FBI units.  Docket No. 34-1, Third Hardy Decl. ¶ 23.

28       In its prior order, the Court explained that the FBI's conclusory assertions that, even though a

**United States District Court**
For the Northern District of California

18

technique is generally known, the specifics on how and when the technique is used is not generally known, are not adequate to meet the agency's burden. Docket No. 32 at 15 (citing *Rosenfeld*, 57 F.3d at 815). Therefore, the Court concluded that the FBI had failed to establish the applicability of Exemption 7(E) to the identity of FBI units and the FBI's investigative techniques and procedures. *Id.* at 15-16. With respect to the two categories of "specific law enforcement techniques utilized to conduct national security and intelligence investigations" and the "identity of FBI units," the FBI's current declaration is largely the same the FBI's prior declarations, which this Court has found to be insufficient. *Compare* Docket No. 34-1, Third Hardy Decl. ¶ 23 *with* Docket No. 22-1, First Hardy Decl. ¶¶ 71-72; Docket No. 26-1, Second Hardy Decl. ¶¶ 18-19. Indeed, the only new information the FBI appears to provide is that the existence of the FBI unit at issue is known to the public. Docket No. 34-1, Third Hardy Decl. ¶ 23. With respect to the "file numbers" category, the FBI asserts the same "mosaic" theory of possible circumvention that the Court previously rejected as insufficient with respect to the "identity of FBI units" category. Docket No. 32 at 16. Accordingly, the Court concludes that the FBI has failed to establish the applicability of Exemption 7(E) to these three identified categories.

With respect to the "database/database collection" category, the FBI states that the its Guardian Threat Tracking System is a reporting system used by the FBI to track threats and other intelligence information. Docket No. 34-1, Third Hardy Decl. ¶ 23. The FBI asserts that "[t]o reveal the characteristics and data that are collected and tracked using this system could allow offenders to circumvent discovery." *Id.* With respect to the collection/analysis information category, the FBI states that the Domestic Investigation and Operations Guide ("DIOG") describes numerous methods that the FBI uses to collect and analyze the information that it obtains for investigative purposes related to the detection and prevention of harm to national security. *Id.* The FBI asserts that "[a]lthough the fact that the FBI collects certain types of information is known to the public, the manner in which the FBI applies and analyzes this information for use in its investigations and for intelligence purposes is not publicly known." *Id.*

Plaintiffs have presented the Court with evidence showing that not only is the tracking system generally known, but the criteria used by the FBI for classifying activities as suspicious and thus subject to tracking in a database is known. Docket No. 44, Third Lye Decl. Ex. 6 at 29-30. Plaintiffs have also

United States District Court
For the Northern District of California

presented the Court with information explaining how suspicious activity reports are collected, vetted, and disseminated.  *Id.* Ex. 5 at 5-7.  The FBI contends that it is not seeking to protect the publicly available criteria for classifying suspicious activity that is referenced in plaintiffs' motion; it is only withholding information that is not publicly known about the system of data collection.  However, this specificity is not contained in the FBI's declaration.  The declaration simply provides a blanket statement that the characteristics and data collected are not known and the way the FBI applies and analyzes this information is not known.  These statements are contradicted by plaintiffs' evidence.  Accordingly, the Court concludes that the FBI has failed to establish the applicability of Exemption 7(E) to the remaining two categories.

### III.    *In Camera* Review

At the hearing, the parties agreed that at this stage in the litigation *in camera* review of the withheld documents would be appropriate to resolve the remaining issues in the case.  The Court agrees to review the withheld documents *in camera*.  However, the Ninth Circuit has explained that "[*i*]*n camera* review of the withheld documents by the court is not an acceptable substitute for an adequate *Vaughn* index."  *Wiener*, 943 F.2d at 979 ("*In camera* review may supplement an adequate *Vaughn* index, but may not replace it.").  "Therefore, resort to *in camera* review is appropriate only after 'the government has submitted as detailed public affidavits and testimony as possible.'"  *Id.*  Accordingly, although the Court will review the withheld documents *in camera*, the FBI must also publicly file a declaration addressing the issues raised above regarding the claimed FOIA exemptions—specifically the deficiencies raised with respect to Exemption 7's threshold requirement, Exemptions 6, 7(C), 7(D), and 7(E), and segregability.  In submitting this declaration, the Court cautions the FBI to bear in mind that *in camera* review of the withheld documents can sometimes be insufficient by itself to establish the applicability of FOIA exemptions.  *See, e,g.*, *Yonemoto*, 686 F.3d at 696 (explaining that "for many of the records, even *in camera* inspection is not sufficiently illuminating to allow us to" determine whether the claimed FOIA exemption apply).

**CONCLUSION**

For the foregoing reasons, the Court GRANT IN PART and DENIES IN PART defendant's motion for summary judgment and DENIES plaintiffs' motion for summary judgment.  The Court ORDERS the FBI to submit the withheld documents along with a table explaining which claimed FOIA Exemptions apply to which parts of the documents for *in camera* review within thirty (30) days from the date this order is filed.  In addition, the Court orders the FBI to publicly file a declaration addressing the issues raised in this order within thirty (30) days from the date this order is filed.  Upon receipt of these additional materials, the Court will issue an amended order in due course.  This order resolves Docket Nos. 43, 47.

**IT IS SO ORDERED.**

Dated: September 16, 2014

SUSAN ILLSTON
United States District Judge